JAMES McCORMICK *et al.*, Respondents, *vs.* RICHARD KIRBY, *et al.*, Appellants.

1. *Legacy—Slaves, bequest of—Sale of—Liability for proceeds—Trusts—Decree, construction of—Abolition of slavery—Conversion, etc.*—Certain slaves were bequeathed to A. for life, remainder to the heirs of her body if any, and if none, then after her death to the heirs of the testator. By an order of court her husband was authorized to sell the slaves, on giving bond, conditioned that when the right of A. " should cease to said slaves," and the right of testator's heirs should " attach to said slaves," he should produce the said slaves, or account for their value to said heirs. Said bond was accordingly given. By its terms, among other things provided, the death of the slaves during A.'s life estate would excuse their delivery to the testator's heirs. The slaves were sold in 1859. A. having no heirs of the body, upon her death in 1870, those of the testator brought suit against her husband for the proceeds derived from the sale of the slaves: *Held,*

1st, The subject matter of the suit, and all the parties thereto, being under the jurisdiction of the court, and defendant being authorized by its decree to sell, the sale was not a breach of trust on his part.

2nd, Plaintiffs having assented to the decree were estopped from complaining, and bound by it; and although a part of them were married women, the suit being for their benefit and they being proper parties, they were in like manner estopped. And the decree would be equally binding on the court in a proceeding in equity as in a suit at law on the bond.

3rd, The sale was not an unauthorized conversion of the slaves into money by defendant, but authorized by the court.

4th, Since the right of plaintiffs did not " attach to said slaves," till the death of A. which was long after the abolition of slavery, they could have no claim on the fund.

*Appeal from Jackson Circuit Court.*

*James K. Sheley*, for Appellants.

Plaintiffs are bound by the decree and have no right to pursue any other remedy. It amounts to and is an estoppel. (Chouteau vs. Goddin, 39 Mo. 229 ; Garnhart vs. Finney, 40 Mo. 449 ; Taylor vs. Zepp, 14 Mo. 482 ; Newman vs. Hook, 37 Mo. 207 ; Taylor vs. Howard, decided in Michigan in spring 1875, September No. of Law Register of 1875, p. 590.)

It is true that this court decided in the case of Philips vs. Evans (35 Mo. 305), that a note given for the purchase price of a slave could be collected notwithstanding negroes were emancipated and the decision was no doubt correct. But here, respondents are not

seeking to collect a note given for the purchase price of a negro, but to recover what was the value of the negroes in 1856, and that, too, when they had no right save in expectancy, till in 1870, and when they had by suit compelled Kirby to give bonds for the value in 1870. In the case cited the negroes were sold and the note given when the owner had, and the purchaser acquired when he bought, a perfect title. In the case at bar, plaintiffs' right to recover the value of the slaves did not ripen till 1870, i. e., when the slaves as property were valueless.

This is not a case of trustee and *cestui que trust*. Kirby never occupied the position of trustee for the remaindermen. But were the fact otherwise, his character of trustee ceased when the judgment was rendered, and the bond entered into, and he then became bailee, with the privilege of either returning the property or paying its value.

*Comingo & Stover*, for Respondents.

I. Having possession of the negroes, by virtue of the limitation in the will, Kirby was, and is, trustee for the remaindermen— the heirs of Johnson, (Clarke vs. Saxon, 1 Hill Eq. 69 ; Henry vs. Glover, 2 Hill Eq. 515 ; Shibla vs. Ely, 2 Halst. Ch. 181 ; Joyce vs. Gunells, 2 Rich. Eq. 259 ; Homer vs. Shelton's Ex. 2 Met. [Mass.] 206–207 ; Swan vs. Ligan, 1 McCord Ch. 227 ; Roberts vs. Roberts, 7 Bush. [Ky.] 100,) and a court of equity may call him to account notwithstanding there may be a concurrent remedy at law. (Hill Trust. side page 528, 4th Am. Ed. ; Mancroft vs. Dowling, 2 P. Wms. 314 ; Cobb's Adm'r vs. Cranch, 28 Mo. 106 ; Leevy vs. Leevy, 34 Mo. 367 ; Yerger vs. Jones, 16 How. U. S. 36 ; State to use, &c., vs. Drury, 36 Mo. 281 ; State to use, &c., vs. Dean, 39 Mo. 44 ; State to use, &c., vs. Dean, 40 Mo. 464 ; Gordon vs. Bruner, 49 Mo. 570 ; Floyd vs. Wiley, 1 Mo. 430 ; Johnson vs. Shader, 3 Mo. 359 ; Dobyns vs. McGovern, 15 Mo. 662 ; Cheshire vs. Cheshire, 2 Ired. Eq. 569 ; Stewart vs. Caldwell, 54 Mo. 536 ; Harrington vs. Utterback, 57 Mo. 521 ; 1 Story Eq. Jur. §§ 64, 80, 6th Ed. & notes to § 80.)

II. The sale was not merely a sale of the life estate of Kirby and wife, but was an absolute sale of the negroes, and the proceeds of the sale should be considered as substituted for the negroes. (Lewey's Curator vs. Lewey, 34 Mo. 367.)

III. The amendments to the constitution of the United States, or of the State of Missouri, or ordinances of the latter, relied on by the defendant Kirby, cannot change the rights of these parties, which became fixed at the time of the sale of the negroes. (Whitesides vs. Williams, 66 N. C. 141 ; Williams vs. Johnson, 30 Md. 500 ; Madden vs. Hooper, 42 Ala. 397 ; 64 N. C. 213 ; 25 Ark. 152 ; 44 Miss. 367.)

IV. The doctrine of estoppel does not in any of its forms apply to married women. (Bigel. on Estop. pp. 485, 486, and cases cited in notes 4 & 5 ; Barker vs. Circle, 60 Mo. 258 ; Hardin & Wife vs. Smith's Exr., 7 B. Mon. 392.)

NAPTON, Judge, delivered the opinion of the court.

This is a suit by certain legatees of Richard Johnson, who claim to be, under the will, entitled to a remainder in personal estate after the determination of a life estate in the defendant Kirby.

The plaintiffs assert that Johnson, by his will, bequeathed two negro slaves to Mrs. Kirby, his daughter, for life, with remainder to the heirs of her body ; and if she should die without issue, remainder to the other children of said Johnson, who are the plaintiffs ; that Kirby and wife took possession of said slaves and in 1859, said Kirby sold said negroes under an order of the circuit court of Jackson county, and received therefor $2,400, and that in 1870 Kirby's wife died.

The plaintiffs therefore claim that the $2,400 received by Kirby, in lieu of the slaves, since the death of Mrs. Kirby, belonged to plaintiffs, who are the parties in remainder.

The answer admits all the facts stated in the petition in regard to the will, possession of the slaves, &c., but states further that the present plaintiffs, or persons whom they represent, together with one Johnson, who is since dead without issue, instituted a proceeding in the Circuit Court of Jackson county, against said Kirby

and wife, which resulted in a decree authorizing the defendant to sell the slaves, or to pay their value whenever the rights of the plaintiffs and his co-defendants should accrue, and therefore insists that as at the date of the death of the tenant for life, the slaves ceased to exist as slaves, there was no remedy, or if there was, it was on the bond.

It is further denied that the slaves were sold for $2,500, but admitted that they were sold for $2,200, and that only the life estate of Mrs. Kirby was sold.

The proceeding in 1859 referred to in this answer, and also in the petition, is set forth in the record, and as it has an important bearing on the case, the substance of it will be stated.

In 1859 the present plaintiffs or their ancestors, parties entitled to the remainder in these slaves, instituted a proceeding in the Circuit Court of Jackson county, to restrain Kirby, the present defendant, from selling these slaves. The details of the petition need not be stated. The defendants admitted all the facts stated, but stated other facts which they believed would render a sale advisable, and denied that they had done or wished to do anything that would prejudice the rights of the plaintiffs.

Upon the petition and answer and proofs adduced, the court made the following final decree :

" Being satisfied that it would be dangerous to all concerned to keep the negroes, the court doth order and direct that said Richard Kirby is hereby authorized to sell and dispose of said slaves on such terms as he shall think proper, upon his executing a bond in the sum of $2,400, with Marcus Gill, as security conditioned that when the right of said Kirby's wife shall cease to said slaves and the right of said Catherine and others, (plaintiffs) shall attach to said slaves, that he shall produce said slaves or account for their value to the parties aforesaid ; " and thereupon said Kirby (the record proceeds) " tenders in open court the bond of himself and wife, with Marcus Gill as security, which said bond and its specifications and conditions is approved by the court, and thereupon this case is dismissed at the cost of the defendant (Kirby) to be enforced by execution," &c.

The bond is as follows :

"Know all men by these presents that we, Richard Kirby and Mary Jane Kirby, as principals, and M. Gill, as security, are held and firmly bound to the State of Missouri, in the penal sum of $ 2,400, lawful money, for the payment of which we well and truly bind ourselves, our heirs, &c. The condition is this: Whereas, R. Johnson did will certain negroes, to-wit, (here follows a description of the negroes,) to the wife of Richard Kirby and to the heirs of her body, and if she (Kirby's wife) died without heirs, without any issue of her body, to revert to heirs of Johnson ; and, whereas, said Kirby and wife were about to sell and the heirs obtained an injunction restraining them ; and whereas, the circuit court of Jackson county, dissolved the injunction upon said Kirby giving bond to be responsible to such heirs of Johnson as shall be entitled thereto when the right of said Kirby and wife shall cease to exist in, and to said negroes : Now, if when the right of said Kirby and wife, or either, shall cease to exist to said slaves, and the heirs of said Johnson shall be entitled thereto, the said Kirby shall then return said slaves, if alive, or shall pay to said heirs the value at that time, of said slaves, and in determining the value of said negroes or either of them, if not produced, the presumption shall be that said negroes are worth just what negroes of their age, and sound, would reasonably be worth, and the burden of proof shall be on said Kirby, to show the death of said negroes or either of them, that they are of less value than negroes of their age, if sound, would be worth ; and in that event this obligation to be void, otherwise to remain in full force and effect. Given under our hands and seals this 25th day of March, 1859."       Signed    "R. KIRBY.
             and sealed. MARCUS GILL.
                       MARY JANE KIRBY."

The conclusion of the present case was a decree by the court in favor of the plaintiffs for $ 2,200, and interest from 1870, when Mrs. Kirby died.

The apparent hardship of this case, however decided, evidently grows out of an event not anticipated in 1859 by the court or any of the parties.

The decree of the circuit court must be based on the assump-

tion that the defendant was a trustee for the parties in remainder, and was guilty of a breach of trust in selling the slaves and converting them into money ; and therefore, upon general principles of equity, he could be held responsible for the money without regard to the character of the original trust fund. And perhaps, in the absence of any proceeding in court, this might have been just, as was held by this court in Lewey vs. Lewey (34 Mo. 367).

But it is impossible to say that Kirby in this case was guilty of a breach of trust, seeing that he only did what he was expressly authorized to do by a decree of a court of competent jurisdiction, where the subject matter and all the parties in interest were clearly under its jurisdiction.

To this decree in 1859, and the bond which led to it, all the parties now complaining, or those they now represent, assented. It is urged that some of them were married women, and therefore no estoppel applies ; but married women are as much estopped by judgments of courts of record as any other parties to such judgment. It was to protect the rights of married women that the power of the court was invoked, and of course they were necessarily proper parties to the proceeding. That protection was granted in a shape, it is to be presumed, acceptable to them and all others who were parties, since no objection was taken to the decree or any appeal taken from it. All parties acquiesced in it and are bound by it, both plaintiffs and defendants.

The proceeding in court in 1859, the terms of the decree then rendered, and of the bond on which it was rendered, upon any construction which might be given to this decree in regard to the amount of interest directed to be sold, clearly kept in view throughout the original nature of the fund. It is not a case of an unauthorized conversion by the tenant for life of slaves into money. In such a case the owners of the remainder would have an immediate right, according to some authorities, to claim a forfeiture of the life interest (2 Hals. Ch. 181), and at all events upon the termination of the life estate to get possession of their estate in remainder in the property or money into which the tenant for life had converted the original fund. But here the plain language of the decree and of the bond, authorizes the sale of

the slaves, and declares most specifically the liabilities of Kirby in the event of such sale. It is clearly provided that the death of the negroes before the termination of the life estate would excuse their delivery to the tenants in remainder, and no liability whatever is provided for, except when the title or estate of the remaindermen shall vest. The exact time fixed for the delivery of the negroes to those in remainder, or their value in money, is to be " when the heirs of said Johnson shall be entitled thereto," and " when the right of said Kirby and wife or either shall cease to exist to said slaves."

The inquiry then is, when did the heirs of said Johnson become entitled to those slaves? The answer must be "never," since Mrs. Kirby lived till 1870, and long before this, slavery was abolished here and elsewhere throughout the United States, and thus both the estate for life and the remainder were destroyed.

It will be observed that the bond in this case was made a part of the decree and incorporated in it literally. If this decree determined the rights of the parties, in the event of a sale either of the life estate, or of the entire title, courts of equity in adjudicating upon these rights are as much bound by it as would be a court of law in an action on the bond. Although courts of equity frequently afford modes of relief not attainable at law, yet they cannot disregard the solemn agreements of the parties by record. This relief must be based on the rights of the parties ; and as in this case these rights and remedies were all specifically fixed in a proceeding in a court having ample jurisdiction over the subject, and over all the parties, it is too late for any of the parties, now to abandon or ignore this proceeding and attempt to assert claims which might have been asserted had no such proceedings occurred. We have no right to assume that Kirby would have sold on any other responsibilities than those he assumed under the decrees, and although that responsibility has turned out to be valueless, it was not his fault or through any action of his, but through an exercise of governmental power which destroyed his life interest as well as the interest of those in remainder.

The judgment must be reversed. The other judges concur.