Leweys' Curators v. Lewey.

----

LOUISA JANE LEWEY AND ADAM LEWEY, BY THEIR CURATORS JOSEPH C. ELDRIDGE AND JOHN HUMPHREY, Defendants in Error, *v.* MARIAN L. LEWEY, Plaintiff in Error.

*Equity—Life Estate—Remainderman.*—Where the owner of the life estate in personal property so deals with it as to endanger the estate of those in re-mainder, a court of equity will require the owner of such life estate to give security against loss to those in remainder.

*Equity—Substitution.*—Where the owner of the life estate in a slave sold him for his full value, and took the note of the purchaser, a court of equity, upon application of those in remainder, will consider the note, or the pro-ceeds thereof, as a substitution for such slave, and will cause the same to be secured for the benefit of the remaindermen.

Leweys' Curators v. Lewey.

*Error to Dallas Circuit Court.*

*E. B. Ewing,* for plaintiff in error.

I. When there is a future right of enjoyment of personal property, courts of equity will interpose and impart relief upon a bill where there is danger of loss or deterioration, or injury to it in the hands of the party who is entitled to the present possession. The modern practice in such cases is only to require *an inventory* of the articles, specifying that they belong to the first taker for the particular period only, and afterwards to the person in remainder. And *security* is not required unless there is danger that the articles may be wasted or otherwise lost to the remaindermen. (Cowenhouer v. Shorter, 2 Paige, Ch. 122–3 ; 1 Sto. Eq., § 604.) But although relief of this protective nature might have been given on a proper state of facts to the defendants in error, while the property remained in the possession of the owner of the life estate, can they now, after the life interest in the slave has been sold, ask the interposition of a court of equity by injunction as to the note in question ? Had there been a sale of the *absolute property* in the slave, in fraud of the rights of defendants in error, with the intent to wholly deprive them of such property or any share in it, then this might have given them a cause of action at law.

II. There can be no *forfeiture* of the property under the *statute.* (2 R. C., § 34, p. 1477.) This could only result from Mrs. Lewey's migrating beyond the limits of the State with an intention there to reside, and taking the slave with her. This being a penal statute, should be strictly construed.

BATES, Judge, delivered the opinion of the court.

Adam Lewey, by his last will, gave and bequeathed all his estate, both real and personal, remaining after the payment of his debts, to his wife Marian Lewey (the defendant herein), to have and hold during her natural life or widowhood, and at her death or marriage to be disposed of as follows : that is to say (among other bequests), he bequeathed to his

son Henderson Lewey a negro boy named Lewis, a slave for life.  The negro slave Lewis was, under the provisions of the will, delivered to the defendant, Mrs. Lewey.

Henderson Lewey died leaving two infant children, the plaintiffs, who by their curators brought this suit.  It was charged in the petition that Mrs. Lewey had sold the slave Lewis, who had by the purchaser been removed out of the State and beyond the jurisdiction of the court ; and that she had received in money the proceeds of the sale, and lent the money to one Paine and held Paine's note for the same, and that she had very little other property.

The answer of Mrs. Lewey admitted most of the matters alleged in the petition, but denied that she had sold any greater interest in the slave than her life estate.  At the trial, it appeared that she sold the negro for his full value ; that the purchaser was a negro-trader, who was reported to have taken him to Arkansas ; that she told him before the sale that she had only a life estate, and he replied that when he wanted a better title he would buy from the heirs.

The court gave judgment, appointing a receiver who should collect the money due by the note, pay the costs of this suit out of it, and lend the remainder at interest, payable semi-annually, and should collect the interest and pay it to the defendant so long as she should live, and at her death to pay the principal to the plaintiffs.

Under the circumstances of the sale of the slave, it should be regarded as a sale not merely of the life estate of the defendant, but as an absolute sale of the negro, and the proceeds of the sale should be considered as substituted for the slave.

Had the slave remained in the hands of the defendant, the plaintiffs would have been entitled, upon showing danger of waste by the defendant, to security from the defendant for the due delivery of the slave at her death, or to the appointment of a receiver to hold the property and pay to the defendant the profits thereof during her life, and upon her death to deliver the property in specie to the plaintiffs.

The money now being the substitute for the slave, may be treated in the same manner if there is danger of waste ; and the reckless disregard of plaintiffs' interests evinced by the defendant in the sale of the negro, shows that there is danger of waste, if she have unrestrained control of the money. (1 Sto. Eq., § 604 & notes.)

If the slave were still in her possession, it might be best for her interest to leave him in her possession, requiring of her security for his due delivery ; but as he is now money, no advantage it is thought would accrue to her by preferring that course, for the possession of the money itself would not probably yield her any greater profit than the interest which she will receive under the judgment of the court, unless the money were used in some way involving extraordinary hazard of its loss.

At most, no such error is shown to have been committed in respect to this part of the case as would authorize us to interfere with the judgment of the Circuit Court, which, with the concurrence of the other judges, is affirmed.