## HANNAH L. MITCHELL v. BOARD OF CURATORS OF MORRISVILLE COLLEGE et al., Appellants.

In Banc, November 25, 1924.

1. **WILL: Interpretation: Intention in Light of Conditions.** In construing a will the primary purpose is to ascertain the true intent and meaning of the testator, and in arriving at his intention all of its provisions should be considered, and the court will as far as possible place itself in the place of the testator and read its directions in the light of his environment and the conditions shown to exist at the time it was made.

2. ———: **Life Estate Without Restrictions: Power of Disposition.** The words "without any restrictions" used in a will by which the testator gives all his property to his wife "for her use during her natural life, without any restrictions," necessarily imply the vesting in her of power to dispose of the property during her lifetime.

3. ———: ———: ———: **Conditions Surrounding Testator.** The will by its second clause gave to testator's wife "all my property, real, personal or mixed, for her use during her natural life, without any restrictions, and she is hereby appointed executrix of this will." The third clause read: "After the death of my wife, I hereby dispose of the property, real, personal and mixed that may remain," by two bequests amounting to three hundred dollars, and "the rest, residue and remainder of my property, real, personal and mixed" he gave to a college for educational purposes. The personal property, after the statutory allowance of $400 to the widow and $500 for her support and the payments of debts, amounted to $631. The real estate consisted of his residence and seven and a half acres connected therewith, and eighty-seven acres near the small town, in several small tracts, either unimproved or pasture lands. The testator had no children, and at the time the will was made in 1910 his wife was sixty-two years of age, and she is the plaintiff, seeking a construction of the will. *Held, first,* that, considering the circumstances surrounding the testator, the amount and character of his estate, and the language of all clauses of the will, especially the clause giving her a life estate in all his property, real, personal and mixed, "without any restrictions," testator did not intend that the property should go undiminished to the remaindermen, but intended that she should have the power to dispose of it, by sale and conveyance; and, *second,* the words in the clause giving the remainder to the college and authorizing its board of curators "to convert any and all property given to them un-

der this will into cash, if in their judgment it is best," operate only on what property may remain undisposed of at her death, and confer only a privilege, and should not be construed as a limitation upon the widow's power previously given to dispose of the property "without any restrictions" for her own use.

Headnotes: Wills: 1, 40 Cyc. 1388, 1393, 1414; 2, 40 Cyc. 1822; 3, 40 Cyc. 1625, 1630.

Appeal from Polk Circuit Court.—*Hon. C. H. Skinker,* Judge.

AFFIRMED.

*Arch A. Johnson* for appellants.

Under the will of A. E. Mitchell, deceased, plaintiff was not clothed with power to sell and convey the title of real estate devised to her for her use during her natural life. Mace v. Hollenbeck, 175 S. W. 876; Bramell v. Cole, 136 Mo. 201.

*Herman Pufahl* for respondent.

Under the will the plaintiff, had power to sell and convey the fee-simple title in the real estate devised to her. Gardner on Wills (1903 Ed.) pp. 478, 479, 480 and 553; Rubey v. Barnett, 12 Mo. 3; Reinders v. Koppelman, 68 Mo. 482; Russell v. Eubanks, 84 Mo. 82; Burford v. Aldridge, 165 Mo. 419; Underwood v. Cave, 176 Mo. 1; St. L. Bldg. & Loan Assn. v. Fueller, 182 Mo. 93; Grave v. Perry, 197 Mo. 550; Romjue v. Randolph, 166 Mo. App. 87; Steiff v. Seibert, 6 L. R. A. (N. S.) 1186; Meyer v. Barnett, 6 L. R. A. (N. S.) 1191; In re Will of Lars Weien, 18 L. R. A. (N. S.) 463; Chewning v. Eason, 39 L. R. A. (N. S.) 805.

LINDSAY, C.—The plaintiff brought this suit to construe the will of her deceased husband, Arthur E. Mitch-

ell, and to determine the rights thereunder of plaintiff, and of the defendants, in and to the real estate devised. It is the contention of the plaintiff that the will gave to her a life estate, with the power to sell and dispose of the fee, and it is the contention of appellants, the remaindermen, that she took only a life estate and could not dispose of the fee. Prior to the time of filing the suit she had sold and conveyed to the purchasers, two small tracts of land. The sole issue was and is whether she had this power under the will. The trial court held that she had the power so to do, and the remaindermen have appealed.

The testator had no children, and after leaving legacies of five dollars each to a brother and a sister, his will continues as follows:

"Second.—I give and bequeath to my beloved wife, Hannah L. Mitchell, all my property, real personal and mixed, for her use during her natural life, without any restrictions, and she is hereby appointed executrix of this will, and I request that she be not required to give bond.

"Third.—After the death of my wife, Hannah L. Mitchell, I hereby dispose of the property, real, personal, and mixed, that may be remaining as follows:

"I give and bequeath to the Parsonage Aid Society of Morrisville Station, Springfield District, Southwest Missouri Conference of the Methodist Episcopal Church, South, located at Morrisville, Polk County, Missouri, the sum of one hundred dollars.

"I give and bequeath to the Woman's Foreign Missionary Society of said Morrisville Station, the sum of two hundred dollars.

"I give and bequeath to the Methodist Benevolent Association of the Southwest Missouri Conference of the Methodist Episcopal Church, South, the sum of five hundred dollars, for the use and benefit of the superannuated preachers and the widows and orphans of deceased preachers of said Conference.

"The rest, residue, and remainder of my property, real, personal, and mixed, which may remain after the

above directions have been complied with, I hereby give and bequeath to the Board of Curators of Morrisville College, an institution of learning under the control of the Southwest Missouri Annual Conference of the Methodist Episcopal Church, South, to establish a memorial fund for preacher-students in said college in memory of my beloved father, Morris Mitchell, my dear mother, Rebecca Mitchell, and my brother, Thomas Clarke Mitchell; the same to be known as Mitchell Memorial Fund; and I hereby direct said board of curators, and their successors in office, to preserve intact the principal of said fund, and to use only the interest that shall accrue from year to year, to help and assist such licensed preacher or preachers who shall be enrolled as students in said Morrisville College, as in their judgment is most needy and deserving, in pursuing his studies in said college. The Board of Curators are hereby authorized to convert any or all property, given to them under this will into cash, if in their judgment it is best, and to invest the proceeds in interest bearing securities. In case said Morrisville College shall at any future time be abandoned as an educational institution, then this bequest shall revert to the Southwest Missouri Annual Conference of the Methodist Episcopal Church, South; to be used for education purposes, for superannuated preachers, the widows and orphans of deceased preachers of said conference, and for Missions in said conference, as the Conference shall direct.''

The will was made February 22, 1910, and the testator died in August, 1911. The inventory, appraisement of personal property and the annual and final settlements filed in the probate court, were introduced in evidence by the plaintiff. The personal estate was small. After the payment of expenses and indebtedness, and the statutory allowance to the widow of $400 and the allowance of the further sum of $500 for her support, there remained a balance upon the final settlement of $631. The real estate consisted of the residence of the deceased and seven and

one-half acres therewith, and about eighty-seven acres of other land in several small tracts situated near the town of Morrisville. These appear to have been unimproved or pasture lands. Their rental value was not shown. The plaintiff offered in evidence a warranty deed made by her to a purchaser in 1910 of a four-acre tract, and also a deed made in 1920 of a tract of fifteen acres, and offered to show that $1200, the consideration paid for the fifteen acres, was a full and fair price. Upon objection of defendants this evidence was excluded.

In this, as in every case involving rights asserted to exist by virtue of the will of a person deceased, the primary purpose is to ascertain the meaning of the will. In these cases all courts are expressly admonished to "have due regard to the directions of the will, and the true intent and meaning of the testator." [Sec. 555, R. S. 1919.] In this inquiry all of the provisions of the will are to be considered in their relation to each other, and to the whole. [Turner v. Timberlake, 53 Mo. 371; Allison v. Chaney, 63 Mo. 279; Chew v. Kellar, 100 Mo. 362; Tisdale v. Prather, 210 Mo. 402.] It has also been said, "The true intent and meaning of the testator can be best ascertained by the courts and those concerned in the execution of wills by putting themselves, so far as may be, in the place of the testator and reading all his directions therein contained in the light of his environment at the time it was made." [Murphy v. Carlin, 113 Mo. l. c. 117, and cases there cited.] In 1910, when this will was made, the plaintiff was sixty-two years of age. She and her husband were childless. The amount and character of the estate left by the testator as shown by the proceedings in the probate court, begun in 1911, have been referred to. The plaintiff was not shown to have been possessed of any other property than that left to her under the will. In ascertaining now what was the intent of the testator, the provisions of the will are to be considered in the light of the conditions shown to exist at the time the will was made.

Counsel for appellants, in support of their claim that
the plaintiff was without power to dispose of the real
estate, cites two decisions only, the decisions of this court
in Bramell v. Cole, 136 Mo. 201, and Mace v. Hollenbeck,
175 S. W. 876. In Bramell v. Cole, the testator de-
vised his estate to his wife "during her natural life-
time; she to have the entire control of the same."
Then after describing his real estate and referring
to his moneys, notes or bonds and other personal
property it was further directed that all "go to her,
for her to have full control of the same as long as
she lives and that after her death, what is left to go
to" the certain persons named. The court in that
case said, l. c. 213: "The ordinary meaning of the word
'control,' when asserted of a person in charge of an estate,
is that he has its management. It might imply a power
to invest and re-invest, but does not imply a power to
dispose of the estate itself so as to defeat the rights of
those entitled to its future use." Discussing the force
of the expression, "what is left," Judge MACFARLANE said,
l. c. 212: "I take the rule in this State to be well settled
that, in case a life estate is expressly given, a power of
absolute disposition will not be implied from the fact that
the devise or bequest over is of what remains, or what
is left of the property, at the death of the first taker,
wherever it appears also that the property may be di-
minished in the hands of the life tenant by the uses to
which it may properly be applied." In that case it may
be observed there was in addition to the real estate de-
vised by the will, personal property to an amount in
excess of fifty thousand dollars, of which about forty
thousand dollars remained upon final settlement, and the
life tenant, in the subsequent management of this, had
converted much of it into real estate. Preliminary to
the foregoing statement of the rule, this court also said
in the Bramell case, l. c. 211:

"In determining the intention of a testator, to grant
to a tenant for life the power to dispose of the property

devised or bequeathed, much weight has been given to the use of words by which the limitation over is confined to what estate remains upon the death of the first taker. Such intention has been held to conclusively appear in case the property devised could only be diminished by a disposition of it by the one to whom the life estate is given. Such declarations are held to be inconsistent with a supposition that the whole property was to remain undiminished in the hands of the first taker.''

In the case at bar, aside from the sum of $631 shown on final settlement, and the residence, the estate consisted of the several parcels of unimproved land, in all about eighty-seven acres. This was property of a kind which could be diminished by the life tenant only through a disposition of it. A consideration of the circumstances surrounding the testator, the amount and the character of his estate does not lead to the conclusion that he intended that at all events the property should go undiminished to the remaindermen. Under the second clause of this will he gave to the plaintiff all of his property ''for her use during her natural life, without any restrictions.'' Under the contention of defendants this use, ''without any restrictions'' must nevertheless be held to be subject to the restriction that plaintiff's use of this unimproved real estate, must be a use of it in that form only. But, in the next, the third paragraph of his will, he makes his purpose more clear. In this, his language is: ''after the death of my wife, Hannah L. Mitchell, I hereby dispose of the property, real, personal, and mixed, that may be remaining as follows.'' In thus disposing of *real* property that may be remaining after the death of the wife, and after a use by her which was to be without any restrictions, it is not reasonable to conclude that the husband thereby intended to give her no power of disposition, but, bound her to hold it undiminished, for the benefit of the remaindermen. This language indicates, when the circumstances of the testator are considered, as they may be, that he had in view the probability that under

the right of use without any restrictions, not all of the real estate might be remaining at the time of her death. He provided for the payment first of three pecuniary legacies for benevolent purposes out of the remainder, and then further directed that all the residue and remainder of his estate should go to the Board of Curators of the Morrisville College. The board of curators was also ''authorized to convert any or all property given to them under this will into cash, if in their judgment it is best.'' It is urged that this provision indicated that the testator's intention was that none of the real estate might be sold until after the death of plaintiff. This provision should not be construed as a limitation upon the rights given to the plaintiff. On its face, it is no more than a privilege given to the board of curators, in the execution of the trust created, to be exercised by the board according to its best judgment, and as to any or all property which the board might receive by virtue of the terms of the will. In Mace v. Hollenbeck, 175 S. W. 876, the other case upon which defendants rely, the provision in the will was as follows:

''First, I hereby give and bequeath to my beloved wife, Martha M. Hollenbeck, if she survives me, my entire estate, real, personal and mixed wheresoever situated after my debts and funeral expenses are paid, to be used for her benefit and assistance in whatever manner she chooses during her natural life and after her death her debts and funeral expenses paid, the remainder to be divided, giving one-half to her legal heirs and one-half to my legal heirs according to their lawful order.''

In that case, the contention was that the widow took the fee. The holding was that she took only a life estate, and it was held that the ''use'' given ''in whatever manner she chooses,'' and ''for her benefit and assistance,'' did not give her power to dispose of the property. These words lack the emphatic and unqualified authority given in a ''use without any restrictions.'' A use without any restrictions may include a use in any form as well as in any manner. It was pointed out in the opinion in that

case that the widow, through the death of the testator, became the owner, as tenant by the entirety, of a flour mill, valued at $3000; that the value of the personal estate was $3262.24, and that the value of the real estate, a farm, was $3500, and its rental value $300 to $350. It was further said: "A large amount of personalty was bequeathed by the will, including, doubtless, the furniture, implements, and livestock customarily found upon a farm. The testator could not have supposed this identical property would be preserved through all the years plaintiff might survive him." In the case at bar property of this kind is shown. It consisted of the household furniture, one horse, twenty years old, a milk cow and a calf, four small hogs, and an old single buggy and set of harness, the whole appraised at $407.

The testator knew what property he had, and when he devised it to plaintiff for her use during life without any restrictions, and in further disposition of it after her death characterized it as property real, personal and mixed that may be remaining, it is unreasonable to assume that he contemplated a diminution in the personal property only, during the time plaintiff might live.

A case much like the one at bar, and both persuasive and authoritative in statement, is that of Underwood v. Cave, 176 Mo. 1. It was there held that the will created a life estate, but with power of disposition in the tenant for life. Judge Fox said, at page 16:

"The testator used this language in creating this life estate: 'It is my will that the property, real and personal, hereby bequeathed to my wife shall be hers absolutely during her natural life, to use and enjoy as she may see proper.' This language is very strong—'shall be hers absolutely during her natural life,'—is, in effect, saying during her natural life she possesses all the elements of ownership, which includes the power of disposal. While it may be said that the other terms, to use and enjoy the property as she may see proper, limited her power to the use and enjoyment of the property as it was, yet when we consider the preceding words that it was to be 'hers

Mitchell v. Morrisville College.

absolutely,' to use and enjoy as she might see proper, we have the use of emphatic terms. When we consider such terms as applicable to the sole object of his bounty, they meant something more than the simple use of the property as it stood. If it was 'hers absolutely during her natural life,' with the full right to enjoy it as she might see proper, doubtless it was contemplated that she had all the powers, in respect to such property, that the language used, 'hers absolutely,' would imply.''

The word ''absolutely,'' as there used, was not stronger than the words ''without any restrictions'' used here. In that case also, the decision in Bramell v. Cole, supra, was considered, and was distinguished, and numerous cases presenting the instant question were reviewed.

The plaintiff took a life estate, but the language used by the testator viewed in the light of his environment points to the conclusion that he gave her the power during her life to dispose of the property. It is a settled rule, that where the life tenant has the power of disposition and does not exercise the power during life, the limitation over to the remainderman takes effect. [Burnett v. Burnett, 244 Mo. 505; Priest v. McFarland, 262 Mo. 236; Crews v. Crews, 240 S. W. 149.] The plaintiff was seventy-three years of age at the time of the trial. In the ten years which had elapsed since the death of her husband she had disposed of nineteen acres of the land. The husband devoted what might remain after her death to the support of the institutions of his church. Although so disposed in mind, he was yet not unmindful of the saying: ''But if any provide not for his own, and specially his own household, he hath denied the faith and is worse than an unbeliever.''

The judgment of the trial court should be affirmed. *Small, C.,* concurs.

PER CURIAM.—The foregoing opinion of LINDSAY, C., in Division One, is adopted as the opinion of Court in Banc. *Graves, C. J., David E. Blair, Ragland* and *Woodson, JJ.,* concur; *James T. Blair* and *White, JJ.,* dissent.