VENUS MASTERSON, DELIA M. ROBERTS, LISSA SHIPTON, BIRDIE SPRING-GATE and NORA JAEGER, Appellants, v. HESTER E. MASTERSON.— 130 S. W. (2d) 629.

Division Two, July 7, 1939.*

---

*NOTE: Opinion filed at September Term, 1938, February 21, 1939; motion for rehearing filed; motion overruled March 15, 1939; motion to transfer to Court en Banc filed; motion overruled at May Term, 1939, July 7, 1939.

*Tyree C. Derrick* for appellants; *Ely & Derrick* of counsel.

*Clarence F. Wescoat* for respondent.

BOHLING, C.—Equity to construe a will, and for other relief, presenting the principal question: Does a residuary clause giving, devising and bequeathing "to my beloved wife . . . absolutely so long as she remains my widow" bestow upon the donee for widow-

hood the superadded power to bona fide consume the corpus or dispose of the fee?

Fred Masterson died childless in February, 1934, testate. His will, duly probated, was executed September 5, 1905, and, after providing for the payment of his debts and $80 annually to his mother during her lifetime, read:

"(3) All the rest, residue and remainder of my estate, whatsoever, real, personal and mixed, and wherever situated, I give, devise and bequeath to my beloved wife, Hester E. Masterson, absolutely so long as she remains my widow."

Testator's will made no further disposition of his estate. His mother died in 1916. We understand the value of the estate, real and personal, passing under paragraph "(3)" of the will approximates $20,000, in round numbers, and consists of real estate, stocks, bonds, secured notes, and cash. The plaintiffs are testator's brother, Venus Masterson, and sisters, Delia M. Roberts, Lissa Shipton, Birdie Springgate, and Nora Jaeger.

The court *nisi* found, among other facts, that testator, as of the date of the execution of his will, was a man of limited means; that testator's mother and wife were the only objects of his bounty; that, other than with his wife's mother, testator was not on friendly terms with his wife's family and desired that no member of his wife's family receive any part of his estate; that defendant, testator's widow, had not remarried; "that except for the bequest to his mother (which has lapsed because of her death), he intended that his wife should have the full use, enjoyment, control and the power of disposition of his estate during her widowhood or during her life should she never remarry;" and entered judgment dismissing plaintiffs' bill.

We are of opinion Haugh v. Bokern, 325 Mo. 1143, 30 S. W. (2d) 47, relied on by defendant, does not rule defendant's preliminary contention that plaintiffs may not invoke the jurisdiction of a court of equity. Sufficient for the instant issue, the ruling in Haugh v. Bokern was to the effect that a court of equity would not assume jurisdiction over an action by a nephew, as an heir of testator, having for its *sole* purpose a construction of said testator's will to determine the legal title to certain real estate passing under said will; because such plaintiff had an adequate remedy at law and because of the general rule that a court of equity will not entertain jurisdiction of a suit brought for the sole purpose of construing a will without seeking further relief or construe a will on the application of one claiming the mere legal title to real estate. The instant action is readily distinguishable in that it seeks the construction of a testator's will affecting personal, as well as real, property and, by allegations unquestioned as to sufficiency, in the event defendant be found vested with a mere base or qualified life estate, a decree protecting plaintiffs against waste, dissipation or conversion of the corpus by the

life tenant.   [Consult 69 C. J., p. 884, sec. 2018; St. Louis v. Mc-Allister (Banc), 302 Mo. 152, 161, 257 S. W. 425, 427(6); and generally 69 C. J. Tit., Wills, secs. 1968, 1972; 1994; 2002; 2003; and 2007.]   St. Louis v. McAllister, supra, arose out of a suit by a testamentary trustee to determine whether the expressed uses of the testamentary trust had failed, involved a possible resulting trust in favor of testator's heirs, and the court considered the heirs necessary parties to a final adjudication of the case.   (Cf. Chambers v. St. Louis, 29 Mo. 543, 572; St. Louis v. McAllister (Banc), 281 Mo. 26, 35, 218 S. W. 312, 313—said heirs appear to have been strangers to the testamentary trust provision.)

Defendant's contention, in the nature of a corollary to the issue just ruled, that because plaintiffs' motion for new trial presented no objections to the court's dismissing plaintiffs' bill on the ground plaintiffs were neither trustees, executors, devisees, *cestuis que trustent* nor legatees, said motion is insufficient to permit of an appellate review is not well taken because if plaintiffs be possessed of a vested nondefeasible remainder in testator's estate they are entitled to the protection of their interest as much as if they had been specifically named in testator's will as legatees and devisees of said remainder. Plaintiffs' motion for new trial adequately directed the court's attention to alleged errors with respect to the power of defendant over the fee of the property, the fundamental issue involved.

"The true intent and meaning of the testator," as often said, is a primary rule for the construction of wills.   [Sec. 567, R. S. 1929, Mo. Stat. Ann., p. 344; Grace v. Perry (Banc), 197 Mo. 550, 559(I), 95 S. W. 875, 877(I), 7 Ann. Cas. 984; Humphreys v. Welling, 341 Mo. 1198, 1203, 111 S. W. (2d) 123, 125(1).]   But wills are required to be in writing (Sec. 519, R. S. 1929, Mo. Stat. Ann., p. 312) and Missouri courts are likewise admonished "to have due regard to the directions of the will" (Sec. 567, supra).   Extrinsic evidence of testator's environment and circumstances at the time of executing his will, admissible to aid in determining an intention where there is ambiguity in the will, is impotent to create an intention not expressed or a will testator intended to but in fact did not make. [McCoy v. Bradbury, 290 Mo. 650, 658, 235 S. W. 1047 1049 (3); Graham v. Karr, 331 Mo. 1157, 1170(6), 55 S. W. (2d) 995, 1001(8); Gardner v. Vanlandingham, 334 Mo. 1054, 1061(1), 69 S. W. (2d) 947, 949(1); Burrier v. Jones (Banc), 338 Mo. 679, 684(1), 92 S. W. (2d) 885, 887(1).]

Defendant takes the position testator's will vested defendant with an estate for life, so long as she remained testator's widow, in all of testator's property (the other sole legatee having predeceased testator) with the superadded power to consume or otherwise dispose of any portion or all of said property, and the income therefrom. Plaintiffs contend the testamentary disposition vested, broadly put, a

base or qualified life estate in defendant, subject to defeasance should defendant remarry; without any superadded power in defendant to encroach upon, consume, or dispose of the corpus or fee pending her enjoyment of said tenancy. Defendant admits the correctness of plaintiffs' position to the extent that so much of the corpus of testator's estate as defendant might not consume or dispose of, if any, during her tenancy under the will would pass to plaintiffs as remaindermen under our statutes (see Sec. 306, R. S. 1929, Mo. Stat. Ann., p. 194) of descent and distribution. This recognizes that the gift of an estate for widowhood with a mere added power of disposition over the fee in such donee requires the execution by the donee of of the power bestowed to pass the fee as the estate in such donee ceases upon the remarriage or death of said donee, precluding the passing of any property or title in such donee by transmission upon death (consult Van Every v. McKay, 331 Mo. 355, 361(5), 53 S. W. (2d) 873, 876(4); and that the gift of an estate for widowhood is not enlarged into an estate in fee by an added power of disposition over the fee in such donee (Hamner v. Edmonds, 327 Mo. 293(a), 36 S. W. (2d) 929, 934(1-3), and Missouri cases cited in annotations in 36 A. L. R. l. c. 1182, and 76 A. L. R. l. c. 1155).

The instant will affords a minimum of indicia for a determination of testator's intention with respect to any superadded power over the fee in the donee. We derive no aid from words giving an explicit power to intrench upon the corpus or from any express gift over of "what remains" or equivalent expressions, indicating a possible diminution of the estate by an exercise of power thereover (consult annotation in 108 A. L. R. 542, and annotations therein referred to, including 2 A. L. R. 1243; 27 A. L. R. 1381, and 69 A. L. R. 825). Any power over the fee in testator's donee for widowhood must be implied from and be made to pivot on the word "absolutely" in the gift of the estate to said donee—"absolutely so long as she remains my widow." If testator had merely passed the estate to his wife "absolutely" or to his wife "so long as she remains my widow," defendant's dominion would have been coincident with that incidental to the *quantum* of the estate vesting.

Defendant, to sustain her position, directs our attention to the cases of Burford v. Aldridge (Banc, 1901), 165 Mo. 419, 423, 425, 63 S. W. 109, 110, 111, 65 S. W. 720; Underwood v. Cave (Div. 2, 1903), 176 Mo. 1, 16, 75 S. W. 451, 455; Mitchell v. Morrisville College (Banc, 1924), 305 Mo. 466, 468, 472, 266 S. W. 481, 482(4); McMurry v. McMurry (Div. 1, 1937), 340 Mo. 1094, 1096, 104 S. W. (2d) 345, 346(2). She makes no claim of any distinction between a right to consume and a power to dispose of the fee. The cited opinions contain language supporting defendant's position, especially the Underwood case; but in each instance insofar as essential to an adjudication of the issue there presented, these cases, as well as others,

may be distinguished from the instant case in that there was an express gift over of what remained upon the termination of the prior estate.

In the Burford case the gift was to testator's widow "to use and manage as she may deem best, as long as she may live," with a gift over "at her death" of "what may be left of my estate after her death;" and the court held the widow took a life estate with power "to consume as much of the estate as she desired."

The Mitchell case was an action to construe a will devising the property to testator's wife "for her use during her natural life, without any restrictions . . ." and "after the death of my wife . . ., I hereby dispose of the property, real, personal and mixed, that may be remaining, as follows: [here followed the gifts over]." The court, in concluding, quoted the passage hereinafter set forth from the Underwood case on the issue of power bestowed, stating, arguendo, the word "absolutely" found in the will involved in the Underwood case "was not stronger than the words 'without any restrictions,' used here." But, as we read the Mitchell opinion, the ruling that the will vested the life tenant with a power of disposition over the fee in the real estate gives consideration to testator's gift over of what remained upon the death of the donee for life. The opinion, after quoting the above introductory clause to the residuary provisions, reads: "In thus disposing of *real* property that may be remaining after the death of the wife, and after a use by her which was to be without any restrictions, it is not reasonable to conclude that the husband thereby intended to give her no power of disposition, but bound her to hold it undimished, for the benefit of the remaindermen. This language indicates, when the circumstances of the testator are considered, as they may be, that he had in view the probability that under the right of use without any restrictions not all of the real estate might be remaining at the time of her death."

In the McMurry case the gift was to testator's wife ". . . making her absolute owner thereof, her lifetime . . .;" with gifts over of a specific monetary legacy and "the remainder;" the court construing "the remainder" to refer to that property of testator not disposed of by the wife during her lifetime. Thus, as in the other cases, testator's will afforded additional indicia from which to gather his intention. But what is said there with respect to power over the fee in the donee for life is dictum because said donee for life exercised no power over any title to the real estate during life, but attempted to transmit the "fee" by testamentary devise. Absent an express authority to exercise a power by will, a life tenant, even though vested with power over the fee, may not transmit title by testamentary gift. [See, among others, Van Every v. McKay, supra; Blumer v. Gillespie, infra; also the McMurry case.] Hence, the effectiveness of Mrs. McMurry's will to transmit the fee depended, not upon any "power"

bestowed but, solely upon the *"quantum"* of the estate devised to her under her husband's will. This, we think, is specifically recognized in the McMurry opinion by the quotation of that portion of the Underwood opinion discussing the *quantum* of the estate while omitting reference to that portion of said opinion ruling the issue of the life tenant's power or dominion over the fee. Hence, our conclusion that in the McMurry case, as in Blumer v. Gillespie (Div. 1, 1936), 338 Mo. 1113, 1121, 93 S. W. (2d) 939, 943(9), it was not necessary "to determine whether she [the donee for life] did or did not have the power of disposition."

Underwood v. Cave, supra, was an action in ejectment, involving land passing to a widow under her husband's will and bona fide deeded by her for a valuable consideration. The controversy turned on the construction of the husband's will; which, in the "second" clause made a gift of the land to "my wife," without stating the character or duration—*quantum*—of the estate; but in the "fourth" clause provided: "It is my will that the property, real and personal, hereby bequeathed to my wife shall be hers absolutely during her natural life to use and enjoy as she may see proper and at her death, if there should be anything left, my will is that it be vested and applied to the use of the Lone Jack Baptist Church . . ." (l. c. 7 and 452, respectively). In that case the court determined the wife took a life estate under the will, with the superadded power to dispose of the fee; and rested the issue with respect to "power" upon the word "absolutely," without recourse to any supporting aid to be implied from the subsequent gift over "if there should be anything left." The court said (l. c. 16 and 455, respectively): "The testator used this language in creating this life estate: 'It is my will that the property, real and personal, hereby bequeathed to my wife shall be hers *absolutely* during her natural life, to use and enjoy as she may see proper.' This language is very strong—'shall be hers absolutely during her natural life'—is, in effect, saying during her natural life she possesses all the elements of ownership, which includes the power of disposal. While it may be said that the other terms, to use and enjoy the property as she may see proper, limited her power to the use and enjoyment of the property as it was, yet when we consider the preceding words that it was to be *'hers absolutely,'* to use and enjoy as she might see proper, we have the use of emphatic terms. When we consider such terms as applicable to the sole object to his bounty, they meant something more than the simple use of the property as it stood. If it was 'hers absolutely during her natural life, with the full right to enjoy it, as she might see proper' doubtless it was contemplated that she had all the powers, in respect to such property, that the language used, 'hers absolutely,' would imply."

However, the Underwood opinion, in discussing the *quantum*

of the estate devised, states (l. c. 15 and 454, respectively): "We are unable to detect any ambiguity in the language used in clause four of this will. . . . The term *absolutely* does not enlarge the estate; it must be construed as applying to the estate granted by the express words. In other words, it means that her life estate, and the use and enjoyment of the property, shall not be limited by any conditions. . . .

"That the testator only intended to create a life interest, is manifest from the express words used, and if additional support was needed to verify this intention, we would then point to the concluding paragraph of clause four, which says: 'If there should be anything left, my will is that it be vested and applied to the use of the Lone Jack Baptist Church . . .' "

Of plaintiffs' authorities:

In Bradley v. Westcott (1807), 13 Ves. 444, the Master of the Rolls, with respect to a gift to testator's wife "for and during the term of her natural life; to be at her full, free, and absolute disposal and disposition, during her natural life . . .," said (l. c. 450): "I must construe the subsequent words with reference to the expressed interest for life, previously given; that she is to have as full, free, and absolute disposition, as a tenant for life can have . . ."

In Smith v. Bell, 31 U. S. (6 Pet.) 68, the gift was to testator's wife "to and for her own use and benefit and disposal absolutely: the remainder of said estate, after her decease, to be for the use of . . ." naming the beneficiary (l. c. 70). Chief Justice MARSHALL, in the course of his discussion, said (l. c. 79): "The operation of these words ['. . . to and for her own use and benefit, and disposal absolutely'], when standing alone, cannot be questioned. But suppose the testator had added the words 'during her life?' These words would have restrained those which preceded them; and have limited the use and benefit, and the absolute disposal given by the prior words, to the use and benefit, and to a disposal for the life of the wife. [13 Ves. 444.] The words then are susceptible of such limitation. It may be imposed on them by other words. Even the words 'disposal absolutely' may have their absolute character qualified by restraining words, connected with, and explaining them to mean, such absolute disposal as a tenant for life may make."

In Brant v. Virginia Coal & Iron Co., 93 U. S. 326, the gift was to testator's wife "to have and to hold during her life, and to do with as she sees proper before her death" (l. c. 327). The court said (l. c. 333): "The interest conveyed by the devise to the widow was only a life-estate. The language used admits of no other conclusion; and the accompanying words, 'to do with as she sees proper before her death,' only conferred power to deal with the property in such manner as she might choose, consistently with that estate, and, perhaps, without liability for waste committed. These words, used

in connection with a conveyance of a leasehold estate, would never be understood as conferring a power to sell the property so as to pass a greater estate. Whatever power of disposal the words confer is limited by the estate with which they are connected." The discussion is closed (1. c. 334): "Numerous other cases to the same purport might be cited. They all show, that where a power of disposal accompanies a bequest or devise of a life-estate, the power is limited to such disposition as a tenant for life can make, unless there are other words clearly indicating that a larger power was intended.

BLACK, J., speaking for the court en banc, in Gaven v. Allen (1889), 100 Mo. 293, 299, 13 S. W. 501, 502, said of the Brant case, supra: "It was ruled that a conveyance made by the wife could pass no more than her life-estate. The rule as there and in other cases stated is that, where a power of disposal accompanies a bequest or devise of a life-estate, the power is limited to such disposition as a tenant for life can make, unless there are words clearly indicating that a larger power was intended."

These cases are to the effect that a power over an estate greater than the estate vesting in the donee of the power should be conferred in express terms or be clearly implied from the terms used; and that words which may be as readily construed as referring to that power incident to the estate vesting as otherwise construed are insufficient to bestow a power greater than that incident to the estate vesting. [Consult also Burnet v. Burnet, 244 Mo. 491, 505, 148 S. W. 872, 876(5, 6); Bramell v. Adams, 146 Mo. 70, 80(1), 47 S. W. 931, 933-(1); Lewis v. Pittman, 101 Mo. 281, 291, 14 S. W. 52, 53; Russell v. Eubanks, 84 Mo. 82, 88.]

The word "absolutely" is, as contended by defendant and ruled in the Underwood case, a strong and emphatic word; but if, as there ruled with respect to the *quantum* of the estate transmitted, it does not enlarge the estate devised but means that such estate as vests under the devise is not limited or conditioned, we are at some loss to understand how said word enlarges the "powers" incident to the estate devised. It is self-evidence that a construction giving the word "absolutely" in the same phrase the same force and effect when applied to the "*quantum*" of the estate devised as when applied to the "power" bestowed on the donee of said estate would be consistent. The Underwood opinion points out no distinction, to say naught of a distinction justifying a difference, for attributing to the term "absolutely" a different meaning when applied to the "*quantum*" of an estate than when applied to the "power" of the donee of the estate. To say that when applied to the *quantum* of an estate for life the word "absolutely" does not enlarge the estate and then to say, without pointing out the distinction, the word "absolutely," without more, when applied to the "power" incident to an estate for life enlarges those powers so as to permit of the life tenant disposing of the fee has

a tendency to involve a *non sequitur* and to blow hot and cold. The word "absolutely" in the phrase "absolutely so long as she remains my widow" indicates the estate for widowhood exists without any limitations or conditions imposed upon its enjoyment in other portions of the instrument; and giving the word a construction which permits it to so function conforms with the express language of the grant. The same reasoning which forbids the cutting down of an estate granted in the absence of equally strong language to that effect in other portions of the instrument should apply with equal force to the grant of a greater "power" in the donee of an estate than those powers incident to the estate granted. Therefore, in the absence of language conferring an express power of disposal over the fee, we hold the mere use of the word "absolutely" in the grant of an estate for widowhood does not clearly imply that such donee is vested with the superadded power of consuming the corpus or disposing of the fee. In so-ruling we do not say the result reached in the Underwood case was wrong; but do overrule the reasoning upon which that result was reached.

Plaintiffs, pointing out the principal part of the estate consists of personal property such as stocks and secured notes, assert they are entitled to have their remainder interests protected against waste and possible conversion. They cite the early cases of Roberts v. Stoner, 18 Mo. 481, 483(2, 3); and Lewey v. Lewey, 34 Mo. 367, which are to the effect that in proper instances a court of equity, in the exercise of a sound discretion, will rule a tenant for life to give security to protect the interests of the remaindermen. [Consult annotations in 14 A. L. R. 1066, and 101 A. L. R. 271.] Defendant stands on her contention that the will vested her with an estate for widowhood with a superadded power to intrench upon and dispose of the fee to refute plaintiffs' position. We have held the will vested the defendant with a life estate and only such power as is incident thereto. However, the nature and extent of the several classes of property involved is not developed in the record and we are not in a position to intelligently rule the issue, especially as to the amount of any security to be exacted for the protection of the remaindermen.

We, therefore, reverse the judgment and remand the cause for further proceedings in accord herewith, if plaintiffs be so advised, or if they be not so advised, the entry of a decree in accord herewith to the extent indicated. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.