George Smith, Mary Wistrand, Louisa Horst, John Smith, George H. Smith, Fred Smith, Minnie Reck, Emma Johnson, Emma Smith, Harry Schuerman, Edmund Schuerman, Gertrude Schneider, Sophie Stuesse, Millie Franks, Edwin F. Huxhold, Dell Huxhold, John H: Smith, Emma Little, Anna Gaubatz, Minnie Johnson, Lillian Nighswander, Lloyd Smith, John W. Boyer, Elizabeth Lorenz Dreisch, Frederick Lorenz and Elroy C. Wood, (Plaintiffs) Appellants, v. Dora Smith, Individually and as Executrix of the Last Will and Testament of Fred Smith, Deceased, Amanda Schultz, Mary Sigler, George Huxhold, Anna Newman and Harry Boyer, (Defendants) Respondents, No. 40993—220 S. W. (2d) 10.

Division One, May 9, 1949.

*Hay & Flanagan, E. D. Franey* and *Jesse M. Owen* for appellants.

46

*Theodore P. Hukriede* and *Carl V. Eimbeck* for respondents.

VAN OSDOL, C.—Action to construe the will of Fred Smith who died survived only by his wife and collateral kindred. By his will of October 31, 1941, testator made provision for the payment of debts; bequeathed general legacies aggregating $4950 to forty-seven legatees; devised forty acres of land to a sister; devised and bequeathed the residue consisting of real and personal property of alleged value about $62,000 to his wife, Dora, for life; and appointed his wife executrix, directing that she should not be required to give bond.

The trial chancellor found the testator intended to devise and bequeath a life estate in the property, real and personal, constituting the residue of his estate, to his wife, she "to have the power and authority to sell any part or all of any real estate and to have both the personal and real estate and the proceeds therefrom for her own use, support and maintenance."

The trial court entered a decree that, "all property remaining in the estate of Fred Smith, deceased, after the payment of his debts, the legacies provided in his will, and the costs of administration be given and delivered over to Dora Smith with power and authority to sell and execute deeds or deed to all or any part of the real estate; that Dora Smith can use the rents, profits or other income from such property and the corpus of such real and personal property for her support and maintenance during her natural lifetime; that at her death the remainder of the estate shall be vested in the heirs at law of Fred Smith; that Dora Smith shall not be required to give a bond to secure the corpus of the estate to the remaindermen." Plaintiffs, certain of testator's heirs at law, have appealed.

Plaintiffs-appellants say there are but two questions involved on this appeal, "first, whether Dora Smith, who admittedly has only a life estate in the residuary estate of Fred Smith, can consume the corpus for her use and support, and, second, whether she should be required to give security as life tenant for the protection of the remaindermen."

Paragraph 17, by which testator Smith treated with the residue of his estate is as follows,

"And lastly, all the rest, residue and remainder of my estate whatsoever, real, personal and mixed, and wherever situate, of which I may be possessed at my death, I give, devise and bequeath to my beloved wife, Dora Smith, to have and to hold the same during her natural life, with full power and authority to sell any part, or all of the real estate and execute a deed or deeds for same at any time

48

during her life, if she thinks best to do so, and use them unrestricted for her own use and support.''

We see from the briefs of the parties, appellants and respondents, that they are of the opinion much depends on the intended meaning of the words ''use them'' in the last clause of the Paragraph 17.

An estate expressly limited by the instrument creating it to an estate for life in the donee is not enlarged into a fee simple in the donee by a power given the donee to dispose of the property by sale. Hamner v. Edmonds, 327 Mo. 281, 36 S. W. 2d 929; Masterson v. Masterson, [12] 344 Mo. 1188, 130 S. W. 2d 629. But the giving of the use of the corpus to the donee for life, in itself, does not import a power to dispose of or consume the fee simple estate. Mace v. Hollenbeck, Mo. Sup., 175 S. W. 876. The noun ''use'' primarily means, ''Act of employing anything, or state of being employed; application; employment; as, the *use* of a pen; his machines are in *use*.'' Webster's New International Dictionary, 2d Ed., p. 2806; Mace v. Hollenbeck, supra. As a general rule, the ''use'' of a thing does not mean the thing itself. Mace v. Hollenbeck, supra. So it has been said that the donation of the ''use'' of a thing, realty or personalty, for life, does not confer upon the life tenant the right to consume or expend the thing itself; or, as otherwise expressed, such a donation, in itself, does not import the intention of the donor that the donee life tenant may anticipate or encroach upon the corpus of the gift. Mace v. Hollenbeck, supra. (We are not here considering the gift of the ''use'' for life of personalty of a kind which would, in the nature of things, perish or wear out by use.) But the verb ''use'' is not always treated in apposition or in correlation of the noun ''use'' as the noun is used to express its primary meaning. (Compare Atlantic National Bank of Jacksonville, Fla. v. St. Louis Union Trust Co., 357 Mo. 770, 211 S. W. 2d 2; Kennedy v. Pittsburg & L. E. R. Co., 216 Pa. 575, 65 A. 1102; Mitchell v. Board of Curators of Morrisville College, 305 Mo. 466, 266 S. W. 481.) The verb ''use'' has several meanings; among others, it may mean ''to employ; as, to *use* a plow''; or ''to consume, as food.'' Webster's New International Dictionary, supra. And the meaning of a word may vary with its setting and the context of the whole instrument being construed, or the word's doubtful meaning may be cleared up by examining the circumstances surrounding the donor at the time the gift was made. The meaning of the word in the will we are construing is that which the testator Smith intended.

''By reason of the 'infinite variety' of expression employed in wills, precedents are of less value in their construction than in many other fields of inquiry. Even identical words justly receive different interpretations when set in variant contexts and used under different circumstances. By the statute (Section 568, R. S. 1939) we are admonished, in construing wills, to 'have due regard to the directions'

therein and to 'the true intent and meaning of the testator,' and such intent must be enforced unless it conflicts with public policy or positive law. The true intent is to be determined from the language of the entire instrument, the circumstances surrounding the testator to be availed of in construing language equivocal or of doubtful meaning. In construing a will, the ordinary, primary meaning is to be given its language unless other terms used disclose that such meaning is repugnant to the testator's intent as it appears from the whole." Mace v. Hollenbeck, supra.

Attending the language of Paragraph 17, we observe the testator gave the rest, residue and remainder to his wife "to have and to hold the same during her natural life." This, without more, gave her the use of the residue in the sense that she was entitled to the income derived from the residue during her life; but the testator seems to have given something more. He gave her "all the rest, residue and remainder of my estate . . . real, personal and mixed . . . to have and to hold the same . . . and use them unrestricted for her own use and support." We have omitted the clause giving the power to sell and convey any part or all of the real property. Of course, the power was given for some purpose the testator had in mind. The testator did not express a power to sell and convey, and reinvest the proceeds and "use" the income therefrom "for her own use and support," but the given power was to sell and convey and use "unrestricted" for her own use and support.

It would seem the word "them" may have been intended to refer to the "rest, residue and remainder" of his estate, especially to the classes of property, real and personal, included in the residue. And, as noted, the use of "them" was an "unrestricted" use (although the purpose for which the residue is to be used is qualified, "for her own use and support"). A use expressly "without any restrictions" may include a use in any form as well as in any manner. Mitchell v. Board of Curators of Morrisville College, supra. We think the plural word "them" less likely to have been intended to refer only to "any part, or all" of the real estate which the wife, if she thinks best to do so, was empowered to sell and convey. Assuming now that the testator did intend that his wife should have the "use" as the word may be interpreted as including the power to consume, diminish or encroach upon the property, real and personal, constituting corpus of the residue of his estate, "for her own use and support," it was necessary to give someone the power to sell and convey the land in order that the widow, life tenant, might consume it. If he did intend to empower his wife to sell and convey "any part, or all" of his real property, "if she thinks best to do so," and consume "it" for her own use and support, he must have intended she should have the power to consume "them," personal and real estate, for her own use and support. Of course, the testator did not direct

50

his wife to consume the entire residue or even to diminish the corpus thereof, but he evidently intended to empower her to do so. It may be he felt the corpus might be increased during Dora's life. He seems to have had confidence in her judgment. In the event she only diminished the corpus, she was empowered to consume from the personalty; or she could retain the personalty and exploit the income therefrom and diminish the corpus by the consumption of the proceeds of the sale of the land "if she thinks best to do so."

We draw the tentative conclusion the distinguished trial chancellor was right.

. ▮ Now examining the other paragraphs of the whole will—testator made bequests to many of his numerous relatives and friends. But he made no disposition of the reversion of the residue—he made no gift over in remainder after the life estate of his wife. (We see only inconsequential technical misnomer in the decree in this case, by its reference to the heirs at law as "remaindermen.") While testator left open the way for his heirs at law to have the residue after the life of his wife, we think his failure to expressly dispose of the reversion tends to confirm the trial chancellor's view that testator intended to give the power to diminish or consume the corpus for her own use and support.

▮ Testator was 77 or 78 years old when he died in late November, 1945. He had married Dora in May, 1938. She was 61 years of age when the instant cause was tried in February, 1948. She had been married before, and had children. Testator's relatives were his brother and two sisters, and the descendants of deceased brothers and sisters of the whole and the half blood. Many of his relatives, heirs at law, are among the legatees we have mentioned, supra. Testator and Dora had lived in his five-room residence property. She personally owned and now owns a $60 per month income-producing property. Testator in his lifetime gave Dora a small cash allowance for groceries; if she did not have enough she used her own money. Testator's "cash position" had materially improved since his marriage to Dora. When they were married he had a checking account of $5000 and when he died it was $15,000. The two of them, "you might say, were saving money, and he was accumulating money as he went along."

Considering testator's collateral relationship to his heirs at law; the nature of his dispositions by the whole will; and the circumstances of the testator, particularly the extent and nature of his estate, we draw the final conclusion the testator intended his wife should have the "use unrestricted" of the residue, real and personal, of his estate during her lifetime including the power to diminish or "consume"—that is, the use of it during her life as if it were her own, save and except the power to consume was a qualified one, for her own use and support. She may not waste or dispose of or diminish the

corpus of the residue by gift, bequest or devise. See Annotations, 2 A. L. R. 1248; 27 A. L. R. 1381; 69 A. L. R. 827.

It was alleged by plaintiffs that, since the greater portion of the residue consists of cash, stocks and bonds—personalty of a "liquid" character—it is likely Dora will [14] conceal, convert and dispose of the corpus of the residue and thus jeopardize and defeat the interests of plaintiffs (and other heirs at law). Plaintiffs prayed for an order requiring Dora to secure the forthcoming of the corpus of the residue upon the termination of her life estate. It is true the liquid character of the personalty would permit Dora to readily squander it or divert its use to some unauthorized purpose, if she were disposed to do so. Moreover, we have noticed her given power to sell and convey the real property.

Where the principal part of an estate consists of personal property such as money, notes, stocks and bonds, in proper instances a court of equity in the exercise of sound discretion will rule a tenant for life to give security to protect the interests of remaindermen, or deliver the property to a judicially designated trustee. Masterson v. Masterson, supra; Lewey v. Lewey, 34 Mo. 367; Roberts v. Stoner, 18 Mo. 481; §§ 202 and 203, Vol. II, Restatement of the Law of Property, pp. 828-842; Annotations, 14 A. L. R. 1066; 101 A. L. R. 271. Although testator apparently intended his heirs at law should have the residue after the death of his wife, Dora, and although Dora's power to consume or diminish the residue is qualified so as to be exercisable only for her own use and comfort, the testator did not expressly require her to give security for the protection of the heirs at law against her waste, or her conversion of the property to some other purpose. Since Dora's welfare was the testator's primary thought and since, as we have noted, he directed that she should not be required to give bond as executrix, it could be reasonably said he manifested an intention she should not be required to secure the corpus to the heirs at law or, as the decree puts it, to the "remaindermen." Comment e, § 203, and Comment e, § 202, Vol. II, Restatement of the Law of Property, pages 840, 841 and pages 832, 833.

On cross-examination of Dora, plaintiffs undertook but failed to show that she was particularly hostile to plaintiffs because of the instant and other litigation. And plaintiffs also undertook to demonstrate by their cross-examination of Dora that she is not experienced in financial matters. While she has had no great and varied experience in the handling of investments, the management and preservation of her own property tends to show she is not improvident. She denied she had made statements to the effect she was "going to try to eat up the estate so there would be nothing left for the heirs." Plaintiffs offered no testimony tending to prove she had made such a statement. So far as the record shows, Dora is frugal (as the testator was). The testator's will reflected his regard for her, and his

confidence in her managerial ability. And the trial chancellor saw her personally. He surely observed her demeanor, and no doubt endeavored to determine the kind of a person she is and her attitude toward the heirs at law as well as the truth of her answers to plaintiffs' questions. We agree with his manifest opinion—no reasonable probability is now apparent that Dora will squander, convert, or dispose of the residue or any part thereof with the purpose of defeating the interests of testator's heirs at law.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.