FREDERICK S. WANGER et al. v. JULIUS MARR et al., Appellants.

Division One, April 13, 1914.

1. **WILLS: Agreement to Make: Specific Performance: Requisite Proof.** Although wills be made on the same day by husband and wife, and be in part reciprocal, nothing on their faces indicating that either is other than an ordinary last will and testament, the evidence to warrant specific performance on the ground that they were made in accordance with a contract, and thus rendered irrevocable, must be clear and convincing and establish an agreement definite and certain. Presumptions will not take the place of proof. [Bower v. Daniel, 198 Mo. l. c. 325, which dealt with a joint will executed by husband

and wife, is overruled in so far as it seems to say, *obiter,* that a preponderance of the evidence will suffice, and that the existence of an agreement may be presumed from the joint will itself.  LAMM, J., dissents from this particular holding, on the grounds that, (1) the ruling in Bower v. Daniel having to do .with a joint will, the overruling of its holding is *obiter* in this case, and (2) one division of the Supreme Court should not attempt to overrule the other, but should send the case into Banc.]

2. ————: ————: ————: ————: **Husband and Wife Giving Life Estate to Each Other.**  Evidence *held* insufficient to warrant specific performance of a will on the ground that it was made pursuant to 'a binding contract, although it was. made on the same day a will· was made by the wife of the alleged testator and each gave the other a life estate in his or her lands.

Appeal from Buchanan Circuit Court.—*Hon. William D. Rusk,* Judge.

REVERSED.

*Charles H. Mayer* for appellants.

The court erred in not dismissing plaintiffs' bill at the close of the evidence.  (a) The burden was upon the plaintiffs to prove that John Marr and Barbara Marr entered into a contract by the terms of which John Marr agreed that, (1) in consideration of Barbara Marr making a. will leaving her property to him for life, remainder to her six children, (2) John Marr would or did execute a will leaving his property to Barbara Marr for life, remainder to her six children,. and (3) that Barbara Marr executed her will in consideration either of John Marr's promise to make such a will or in consideration of John Marr having at the time executed such a will.  Such was the contract alleged by plaintiffs, and such did they allege to be its terms.  (b) It was necessary to prove this contract, and the terms thereof; by evidence so strong, cogent and convincing as to remove and exclude every doubt. Steele v. Steele, 161 Mo. 566; Kinney v. Murray, 170

Mo. 674; Charpiot v. Sigerson, 25 Mo. 63; Wright v. Tinsley, 30 Mo. 389; Gupton v. Gupton, 47 Mo. 37; Sutton v. Hayden, 62 Mo. 101; Sitton v. Shipp, 65 Mo. 297; Sharkey v. McDermott, 91 Mo. 647; Davis v. Hendricks, 99 Mo. 478; Rogers v. Wolfe, 104 Mo. 1; Teats v. Flanders, 118 Mo. 660; Nowack v. Berger, 133 Mo. 24; Alexander v. Alexander, 150 Mo. 579; Steele v. Steele, 161 Mo. 566; Lynn v. Hockaday, 162 Mo. 111; McElvain v. McElvain, 171 Mo. 244. (c) Plaintiffs not only had to prove some agreement, but the burden was upon them to establish the terms of the agreement. Davis v. Hendricks, 99 Mo. 478. (d) Even if the unsatisfactory evidence of W. R. Porter should be considered sufficient to establish, as facts, that the wills were executed on the same day and that they were similar in their provisions, no presumption is raised that the wills were executed in pursuance of the contract alleged. Edson v. Parsons, 85 Hun, 263; Edson v. Parsons, 155 N. Y. 555; Gall v. Gall, 19 N. Y. Supp. 332. (e) The statement of the witness Stegall, that John Marr stated to him that "they had agreed as to what they wanted in their wills," is no proof whatever that the will of Barbara Marr was executed in consideration of John Marr executing a similar will, or any will. The court will not guess as to the terms of the agreement.

*John E. Dolman* for respondents.

This class of cases is distinguishable from that class of cases cited by the appellant in which a stranger in blood seeks under an alleged parol agreement with the deceased to take the property from the latter's heirs, in that in such cases the evidence must be clear and convincing in order to the enforcement of the will, while in this class of cases a preponderance of the evidence will suffice; and when a husband and wife make mutual wills it may be presumed from the wills themselves that the provisions made by the one were

induced by the provisions made by the other.  Bower v. Daniel, 198 Mo. 289; Carmichael v. Carmichael, 72 Mich. 76; Dufour v. Percira, 1 Dick. Ch. 419.

BLAIR, C.—February 5, 1895, John and Barbara Marr, husband and wife, executed wills.   By these each was given a life estate in the property of the other and the remainder was devised to plaintiffs and defendant as hereinafter more fully explained.   In February, 1897, John Marr executed a second will. In 1898 Barbara Marr died.   John Marr took possession of her land.   In 1906 he executed a third will and thereafter died.

The petition alleges the two wills of February 5, 1895, were executed pursuant to a contract between John and Barbara, and prays the specific performance thereof.   Defendant appeals from a decree for plaintiffs.

John Marr was Barbara's second husband, and defendant is their only child.   By her former marriage Barbara had five children, plaintiffs herein.

The petition alleged John Marr had failed to invest certain moneys of his wife as she directed but invested them in his own name, and the wife desiring that her children should share alike in her property and that of John, her husband, demanded, and he agreed, "that each of them should, respectively, by last will and testament, so devise and bequeath the property that the survivor should enjoy the use and benefit thereof during life, and that upon the death of the survivor the entire property owned by each at the time of his or her death should go to and become vested in the said six children of Barbara Wanger Marr, absolutely," and alleges that the wills executed February 5, 1895, sprang from and were designed to carry out this agreement.   Of these wills that of Barbara was in evidence; that of John was not, parol evidence being offered to show its contents.

By the will he executed in February, 1897, John Marr gave to Barbara, his wife, a life estate in his property, with remainder to defendant. The will John Marr executed in 1906 differed from that executed in 1897 only in that plaintiffs are named therein and given one dollar each.

February 5, 1895, Barbara Marr owned 280 acres of land. By her will of that date she gave her husband a life estate in the tract, with remainder to her six children, plaintiffs and defendant herein. This will makes no provision as to Barbara's personalty, if any, and none as to subsequently acquired property.

The will executed by John Marr on the same date not being produced, one of the witnesses thereto and the draftsman were called to prove its execution and contents. The other witness to the will was dead.

Mr. Stigall, the draftsman, testified he drew the two wills and that both were executed at the same time and place. This witness further testified he remembered that John Marr in his will devised his forty acres of land to Julius, defendant herein, subject to a life estate in Barbara, John's wife, but did not remember what disposition the will made of John's personalty. Witness was shown John Marr's will executed in 1897 and testified he wrote that will but had forgotten doing so; that he remembered writing only one will for John Marr. He said his memory was bad as to one will or the other. He further testified he did not remember anything in the will of February 5, 1895, different from that executed in 1897. This witness further testified: "Q. I wish you would tell the court what, if anything, John Marr said to you with reference to any agreement between him and his wife prior to the time these wills were made? A. I don't think he ever said anything about an agreement. Q. What did he say? A. He was down at my store, talked to me a time or two, or three or four; he wanted me to write the wills. Q. Then did you speak to him about

it? A. No, sir; I never did speak to him about it; he came down one morning and said they had agreed as to what they wanted in the wills; it was a damp, drizzling, rainy morning, and I told him I would lock the store and go up and write the wills; I went and did so. Q. Did he at any time prior to the time you made these wills tell you they had not yet agreed upon what they wanted? A. Well, yes; he would speak about wanting me to write the wills, but hadn't agreed just how they wanted them written, but never mentioned any terms to me. Q. How many times did he tell you they hadn't agreed? A. He spoke to me two or three times about it. Q. That they hadn't agreed upon the terms of the will? A. Yes, sir."

On cross-examination he testified: "Q. When you say to the court Mr. Marr told you they had not agreed on the terms of the will, you don't mean that they were agreeing as between themselves, but were discussing the will, as to what they would put in it? A. I don't know what they meant; no idea it was to be the terms of the will, not a thing. Q. And he never said anything to you indicating that they had any agreement between themselves or the terms of the agreement? A. Just made the statement that they hadn't agreed upon the will. Q. You don't know whether there was any agreement between them or not? A. Never heard a word spoken of it."

Porter, one of the witnesses to the wills, testified: "Q. Tell the court as near as you can recollect what was in the will of Mr. Marr? A. As near as I can recollect word for word as it was, was that there was forty acres individual land that he willed to his son without any restrictions any way at all, and he made provision—in the first place, so I can make it a little plainer, they made her will first, and in her will, why, she left the use of all her property to him his lifetime, provided that he outlived her; he done the same thing with her, if she outlived him; she had the use of his

property, and to the best of my recollection is that at the time of his death or her death, when they was both done with it, then it was to be equally divided amongst the children, whatever they might have—I believe the will said, 'Whatever they might have.' · That is as near as I know. Q. Excepting the forty acres? A. The forty acres was individual property and that went to Julius. Q. That went to Julius? A. Without restrictions. Q. And the balance of the property was to be divided equally amongst the children? A. Yes, when they was both done with it, and her will was the same; they were both exactly alike, except the forty acres of land, as near as I can recollect.''

Porter also testified he knew nothing about any agreement between Mr. and Mrs. Marr or why they made the wills he witnessed.

Plaintiffs offered to prove by each of themselves that after the death of their mother, Mrs. Marr, and at the time her will was read, John Marr said to the six children: ''I have made a will in which I have provided for you just the same—are you satisfied?'' and they all said yes.

There was no substantial evidence supporting the allegations of the petition to the effect that John Marr had used some of his wife's money without her authority and was indebted to her prior to the making of the wills of 1895. The trial court expressly found against plaintiffs on this issue.

We understand counsel to agree that when joint and mutual wills are executed pursuant to a definite contract, upon sufficient consideration, and one testator dies and the other takes under his will, equity will, to prevent fraud, specifically enforce the contract; and to agree that there must be such a contract before equity will intervene.

The question in this case is whether there was an enforcible contract between John and Barbara Marr pursuant to which they executed their wills in Febru-

ary, 1895. A preliminary question debated is as to the quantum of evidence necessary to establish such a contract or agreement.

I. There is no pretense there is or was anything on the face of either of the wills indicating it is other than an ordinary last will and testament. The effort

Agreement to Make a Will: Specific Performance: Proof.

in this case is to establish by parol and extraneous evidence a contract so affecting John Marr's will that equity will deny to him the power to revoke. Revocability is one of the distinctive characteristics of wills. It is necessary to inquire as to the quantum of evidence essential to establish a contract or agreement of such character as to warrant a court of equity in granting relief like that sought in this case.

Specific performance in this case must be decreed, if at all, upon the theory that there was an agreement not expressed in the wills themselves and inconsistent with their nature as wills and of such character as to transform that which on its face is a will into an irrevocable compact. On principle the usual rule applied in other cases in which it is sought to specifically enforce an oral contract in the face of a writing covering the same subject matter and inconsistent with such contract ought to govern in weighing the evidence in this case. For this conclusion there is ample authority.

In New York it is held that the rule applied in suits to enforce an agreement to devise property in a particular way is, as to the character and weight of the evidence required, applicable in cases in which it is sought to establish the making of mutual wills pursuant to contract. In Edson v. Parsons, 155 N. Y. l. c. 568, among other things, the court said: "A general maxim, which equity recognizes, is that a testator's will is ambulatory until his death. It is a disposition

of property which neither can nor is supposed to take effect until after death. I think it needs no further argument to show that to attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement which is relied upon to change its ambulatory nature, and that presumptions will not, and should not, take the place of proof.''

In Wilson v. Gordon, 73 S. C. l. c. 160, it was said: ''Such contracts may be established by direct proof of an express promise or inferred as a conclusion of fact from the circumstances surrounding the parties. But where a contract to make or not to revoke a will is set up there are strong reasons for requiring an agreement definite and certain, established by evidence clear and convincing.''

Speaking of such contract, the Supreme Court of Oregon, in Sappingfield v. King, 49 Oregon, l. c. 109, 110, said: ''In such case the agreement must be certain and definite and the court must have full and satisfactory proof of it.''

In Herrick v. Snyder, 27 Misc. Rep. l. c. 464, it was said that an agreement between husband and wife for mutual wills ''must be very convincingly proved,'' and the same rule was approved in Everdell v. Hill, 27 Misc. Rep. l. c. 287.

In Albery v. Sessions, 2 Ohio N. P. l. c. 240, the court said: ''The existence and terms of the contract must be established by the most clear and satisfactory evidence.''

In Coveney v. Conlin, 20 App. Cases, l. c. 328, it was held that ''the agreement must be complete, definite in its terms, and proved with clearness and certainty.''

No authority to the contrary has come to our attention unless what is said in the case of Bower v. Daniel, 198 Mo. l. c. 325 is to be so considered. In that case the will involved was a single instrument executed both by husband and wife, and in the course

of the opinion Division No. Two of this court said:
"This class of cases is distinguishable from that class
in which a stranger in blood seeks, under an alleged
parol agreement with the deceased, to take the prop-
erty of the latter's heirs, in that in such cases the evi-
dence must be clear and convincing in order to the en-
forcement of the will, while in this class of cases a
preponderance of the evidence will suffice. In the case
at bar the intention of the husband and wife is clearly
shown by the joint will. In Dufour v. Pereira, 1 Dick.
Ch. 419, it is held that when a husband and wife make
a joint will of their separate properties, it may be pre-
sumed from the will itself that the provisions made by
the one were induced by the provisions made by the
other. As was said in Carmichael v. Carmichael, 72
Mich. 76: 'We have no doubt from the two wills that
the mother and father came to a mutual understanding;
. . . . that the making of one will was an inducement
to the making of the other.' "

In this it appears the court seems to have con-
fused two questions, i. e., (1) that as to the quantum of
evidence necessary to prove the agreement relied up-
on, and (2) that as to whether the fact that the hus-
band and wife executed a single instrument as a will
reciprocally disposing of the property of both was suf-
ficient evidence of such agreement, whatever the rule
as to the weight of evidence required.

The fact is, neither of those questions was pre-
sented for decision in that case. The trial court had
expressly found the joint will was executed by the
husband and wife pursuant to a compromise agree-
ment settling differences between them as to the pro-
visions to be made for their children and that it was
made in consideration of mutual concessions. The rec-
ord did not show that the bill of exceptions had even
been filed and the court expressly held the bill was
not before it and the evidence could not be considered.

It also held that the trial court's findings must be treated as a special verdict.

In these circumstances what the court said respecting the weight of evidence necessary to establish the contract set up and respecting the sufficiency of the will itself to show such a contract was *obiter*.

What was said as to the weight of evidence necessary is supported by neither principle nor authority but is directly opposed to both, and so much of that decision as holds that a mere preponderance of evidence is enough to prove an agreement like that relied on in this case and in that is overruled.

So far as that case holds that the execution of a joint will is enough in itself to show an agreement of the sort mentioned, it is not supported by the authorities cited. In Dufour v. Pereira the "will was in an instrument which was jointly executed by the husband and wife, and while not a conclusive it was a very material circumstance to be considered" (Edson v. Parsons, supra, l. c. 568), and "the will itself contained words indicating an intention to make a binding contract" (Wilson v. Gordon, 73 S. C. 64), and the surrounding circumstances were also significant.

By inadvertence the court in Bower v. Daniel, in quoting from Carmichael v. Carmichael, 72 Mich l. c. 83, omitted words which, when included, end the usefulness of that decision as support for the conclusion in aid of which the court cited it. The Michigan court said: "We have no doubt from the two wills *and their terms, and the oral evidence connecting them,* that the father and mother came to a mutual understanding," etc. The italicized words the court in Bower v. Daniel overlooked in quoting from the Carmichael case. Those words show there was oral evidence in the case upon which the court relied in part for its conclusion. The existence of an oral agreement pursuant to which the wills considered in that case were alleged to have been executed was in issue

and the oral evidence on this issue is not stated in the opinion.

That case is no authority for the second mentioned position taken by this court in Bower v. Daniel.

As said in a quotation above set out from Edson v. Parsons, the simple fact that husband and wife executed a single instrument as their will is evidence of an agreement, but, alone, is not conclusive. In so far as Bower v. Daniel intimates the contrary it is overruled.

This question is discussed because of the contention that the rule stated in Bower v. Daniel is the law and the further contention that the same rule applies with equal force to separate wills, reciprocal in character, executed simultaneously by husband and wife.

We hold that what is said on the subject in Bower v. Daniel is not the law, and, further, that the reciprocal character of separate wills, if proved, is not so significant evidence that they were executed pursuant to contract as is the execution in a single instrument of the joint will of husband and wife. This is evident from the mere statement of the case.

II. In order for this decree to stand it must appear that the wills of John and Barbara Marr were executed ·pursuant to a contract supported by a sufficient consideration, and certain and definite in its terms. [40 Cyc., p. 2118.] While direct evidence of the existence of such a contract is not indispensable, yet the contract must be proved by evidence measuring up to the standard fixed by the authorities cited and principles adverted to in the preceding paragraph. Is such a contract so proved in this case?

*Evidence.*

The witness Porter knew nothing and heard nothing of any agreement between Barbara and John relating to the wills they executed and he witnessed February 5, 1895. The testimony of the witness Sti-

gall that John Marr told him he and his wife had "agreed" upon what they wanted in the wills is to be understood in the light of all his testimony.

First, in answer to a direct question, the witness said he didn't "think he [John Marr] ever said anything about an agreement," and subsequently he testified he "never heard a word spoken of" an agreement between John and Barbara. Again Stigall testified he did not remember anything in John Marr's will of February 5, 1895, different from the will of February, 1897, which was in evidence, and that will gave to Julius Marr the property plaintiffs are now seeking to recover. Stigall drew both wills. His testimony and the will of 1897, drawn by him, indicate he is a man of intelligence. It is strange, if he knew of any agreement carried into effect by the will of 1895 and violated by the will of 1897, that he should have utterly forgotten drawing the will of 1897. It was admitted by him to be in his handwriting. It is reasonable to suppose that if he knew the will of 1895 was drawn to carry out a contract between Barbara and John, the will of 1897, separately executed by John, would not have been likely to have escaped the memory of the witness entirely if it differed from the former will in any material respect.

The statement of John Marr to which plaintiffs offered to testify had no bearing upon the question of the existence of an agreement between John and Barbara and, if made, is directly contradicted by the witnesses Stigall and Porter who testify John Marr's will gave defendant the forty acres John owned.

The testimony of Porter that the wills each contained a provision that "whatever they might have" except John's forty acres, was to be divided among the six children, is of little weight in view of his further testimony that both wills were "exactly alike" in this respect, "as near as he could recollect," and of the further fact that Barbara Marr's will, offered in evi-

dence, contained no such language, but merely disposed of 280 acres of land without reference to any other property she had, if any, or might thereafter acquire.

Further, plaintiffs plead a contract whereby all the property of John and Barbara was, after the death of both, to be divided equally among the six children, plaintiffs and defendant. Plaintiffs clearly proved that the will of John Marr, contract or no contract, was not drawn on that theory. Porter and Stigall both testified that by his will he gave the remainder in his forty acres to defendant solely.

Under the will of Barbara Marr, John Marr took nothing to which he was not entitled as tenant by the curtesy. The remainder in Barbara's land was given to her *six* children. Under John Marr's will his property goes to his only son.

The fact the wills were made on the same day and that in each the maker of the other was given a like estate in the property devised is evidence of concert of action but not sufficient to prove the existence of a binding contract.

There is not sufficient evidence there was any agreement and no satisfactory evidence of what the will of John Marr contained, even could it be assumed it was executed pursuant to some agreement.

In these circumstances a court of equity has no power to decree specific performance. The decree is reversed. *Brown, C.,* having been of counsel, not sitting.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur. *Lamm, J.,* in separate opinion.

CONCURRING OPINION.

LAMM, J.—The following observations are submitted. In the instant case the doctrines of Bower v. Daniel, 198 Mo. 289, are exploded in certain particu-

lars. It is held in the instant case that what is said in that case on the *quantum* of proof necessary to enforce the performance in specie of a *joint* will as against a party who enjoyed benefits thereunder is *obiter dictum* because (the learned Commissioner says) the evidence did not come up, absent a proper abstract in that case, hence Division Two had not before it the question of the amount and sufficiency of the evidence. As to that I say:

Whether the observations of Division Two in that behalf in the Bower-Daniel case were *obiter dicta* pure and simple, or *obiter* at all, or merely *obiter* of such a class that the line of demarcation between them and sound exposition is shadowy, it is not my purpose to discuss. What I do say is that the criticism of that Bower-Daniel case in the instant case on the question suggested is itself unmistakable and palpable *obiter*. It is *obiter* against *obiter* if the Bower-Daniel case side-stepped into *obiter* at all. Now *obiter* against *obiter* merely setteth the matter at large and avails nothing. Observe, the instant case is not one concerning a "joint will;" *ergo,* has nothing to do with *quantum* or character of proof necessary to specifically enforce such a will.

If the mere fact of executing a joint will is not of itself sufficient to establish an agreement to make reciprocal wills and does not thereby make one will a consideration for the other, so that the joint will is no longer ambulatory so far as the party who has received benefits thereunder is concerned, then we should so rule in some case where the question is held in judgment as decisive and not in a case where there is no such will or question, as here, for self-evidently a joint will stands on a different foot than two wills that happen to be executed cotemporaneously.

Besides that, one division of this court should not attempt to overrule the other without sending the case into banc, whereby the court as a whole can be made to

speak a single authoritative voice and not a double one as we will now do. The mischief of doing that way is animadverted upon in Gass v. Evans, 244 Mo. l. c. 352. To sail well the two wings of the court should flap together. (I use the figure merely to illustrate, and not to designate the court as a bird.) The theory that one division of this court can overrule the other is unsound and tends to chaos. The correct course is pointed out in Feller v. Lee, 225 Mo. l. c. 334.

I agree to the final conclusion reached in the instant case, but dissent from that part of the opinion overruling the Bower-Daniel case.

*Chas. H. Mayer* for appellants.

*John E. Dolman* for respondents.