George B. GLUECK, Executor of Estate of
Abbie Smith, deceased, Plaintiff-
Respondent,

v.

John J. McMEHEN, Jr., and Edna McMehen,
Defendants-Appellants.

No. 7706.

Springfield Court of Appeals.
Missouri.

Nov. 21, 1958.

John K. Hulston, Lincoln, Lincoln, Haseltine, Forehand & Springer, Springfield, for defendants-appellants.

James H. Keet, Springfield, for plaintiff-respondent.

McDOWELL, Judge.

This is an action in equity. George B. Glueck, Executor of the Estate of Abbie Smith, deceased, filed suit in the Circuit Court of Greene County, Missouri, against defendants to set aside the release of a $1,500 promissory note payable to Abbie Smith and a deed of trust securing the same asking that the court adjudge the note and deed of trust to be in full force and effect and that defendants be declared legally obligated to the estate under the terms of said instruments. Judgment was for plaintiff. Defendants appealed.

The petition, in substance, alleged that Abbie Smith and her husband, L. B. Smith, executed a joint will pursuant to a contract between them by which they agreed that the will was to be irrevocable after one testator had accepted benefits under the will after the death of the first testator and that the testator dying second would not dispose of any of the property jointly owned by the said testators without receiving adequate consideration therefor. It alleged that L. B. Smith died in 1954 and immediately upon his death Abbie Smith accepted benefits under the joint will and continued to do so up until the time of her death, December 20, 1955. That L. B. and Abbie Smith owned 20 acres of land (in the petition described) as tenants by the entirety; that after the death of L. B. Smith until October 5, 1955, the property was owned solely by Abbie Smith and that on that day she executed a deed to said real estate to defendants and received in payment thereof a note for $1,500 due five years after date, secured by a deed of trust on the property, which deed of trust was recorded. That on or about November 4, 1955, Abbie Smith endorsed said note, "paid in full" and the deed of trust was released of record; that said release amounted to a gift to the defendants, made without consideration, and was in violation of Abbie Smith's contractual duties under the joint will.

The petition alleges that defendants have paid no part of the principal or interest and that the same is now due. It asks that the court set aside the release of said note and deed of trust and decree the same to be in full force and effect and that defendants are legally obligated to the estate under the terms thereof.

The answer admits plaintiff is the duly appointed and acting executor of the estate of Abbie Smith and that defendants are residents of Greene County; that Abbie Smith died testate leaving a will which she jointly made with her husband, L. B. Smith, who died in 1954, and denies generally all other allegations of the petition. Defendants specifically deny they knew of the terms of the joint will and admit that they have never paid any part of the principal or interest under the terms of the note.

The facts show that L. B. Smith and Abbie Smith, husband and wife, executed the joint will October 19, 1953, which is in evidence as exhibit (A). It reads:

"Will of L. B. Smith and Abbie Smith: Page 1.

"We, L. B. Smith and Abbie Smith, husband and wife, residing in the County of Greene, State of Missouri, each of us being of sound mind and being desirous of jointly making some disposition of our property to take effect at our death, do make and declare this our last Will and Testament, hereby revoking all former wills by us or either of us at any time made:

"Article 1: It is our will and we direct that all our debts including funeral expenses be paid.

"Article 2: It is our will and we direct that in the event of the death .

of either, prior to the death of the other of said testators herein, then full ownership and property rights of our entire estate, both personal and real estate, shall be vested in the survivor of the said testators herein, subject only to the payment of debts of the deceased and ordinary administrative expenses, and at the death of said last survivor, we direct that our executor hereinafter named and after payments of debts and funeral expenses, shall make distribution of the residue of our entire estate to the following persons and in the following manner:

"Article 3: We give and bequeath to Grace Kelso the sum of Two Thousand Dollars, ($2,000.00).

"Article 4: We give and bequeath to Rhoda Kelley the sum of Two Thousand Dollars, ($2,000.00).

"Article 5: We give and bequeath to Isaac Grantham, brother of Abbie Smith, the sum of One Dollar, ($1.00).

"Article 6: We give and bequeath to L. W. Smith, W. L. Smith, and John L. Smith, brothers of L. B. Smith, the sum of One Dollar, ($1.00) each.

"Article 7: It is our will and we direct that after the payment of all our debts, costs of administration and the foregoing bequests, that full and complete ownership and title be vested in our niece, Laura C. Glueck, in and to all the residue of our estate, consisting of personal property and real estate, of whatsoever nature and wheresoever situated.

"Article 8: It is our will and we direct that George Glueck be appointed Executor of this will and that he have full authority to collect all bonds, notes, mortgage, accounts and other evidences of debt, which may be due our estate at the time of our death, and make distribution of proceeds as provided.

"In Witness Whereof, we have hereunto signed our names to the foregoing instrument at Walnut Grove, Missouri, this 19th day of October, 1953.

/s/ L. B. Smith Seal
·/s/ Abbie Smith Seal

"We, O. C. Matthews, C. C. McClelland, and Harry Hill, each residing at Walnut Grove, County of Greene, State of Missouri, have at the request of L. B. Smith and Abbie Smith, in their presence and in the presence of each other, signed our names as witnesses to the foregoing instrument at Walnut Grove, Missouri, this 19th day of October, 1953.

· /s/ O. C. Matthews Seal
/s/ C. C. McClelland Seal
/s/ Harry Hill Seal

"Filed: April 1, 1957."

The joint will was prepared by Nelson L. Murray at the request and direction of both parties. Murray testified:

"Q. Did both of them come to your office and talk to you about it? A. Yes; they did.

"Q. And they both came together, is that right? A. Yes.

"Q. * * * Now when L. B. Smith and Abbie Smith came to you to get you to prepare the will, they gave you the information, did they, that was to enable to—to enable you to put down in the will what they had agreed on would be the disposition of their property. Is that right? A. Yes; they did."

Murray testified that he did not remember the conversation other than what was recorded in the will but that the parties agreed what disposition was to be made of their property and he wrote the will according to their directions and at their request; that they both agreed that that

was the way they wanted their property to go.

Rhoda Kelly Fender, niece of Abbie Smith and a legatee in the will, testified that she had a conversation with L. B. Smith and Abbie Smith when L. B. Smith first went to the hospital; that he went over in some detail just what he and his wife had agreed on as to who would take their property. She stated he named the various gifts left in the will, in Abbie's presence, and said that they would be paid out of the estate after her death; that she would have the use of the property for whatever she needed.

Connie Glueck, niece of L. B. Smith and residuary legatee under the will, testified that when she and her husband were visiting in the home of L. B. and Abbie Smith they were requested by the Smiths to take them to Bolivar to make a will; that Abbie said, "Well, we are going up there and get this business taken care of before something happens, I don't want that responsibility on my hands". She testified that on another visit she and her husband took Abbie Smith to Springfield for dinner and that she discussed with Abbie the matter of her being a legatee under the will and told her that she would rather they would make out another will and give the property to those they wanted to have it and that Abbie said "No sir, we made that will out and we are satisfied and we are going to leave it just like it is". She testified that when they returned to the Smith home, L. B. Smith said, in the presence of his wife, "we picked out the ones we want to have it, that's the way we are going to fix it," or had fixed it.

The evidence shows that after the death of L. B. Smith and prior to the qualifying of the testator under the will, Abbie Smith accompanied Connie Glueck and her husband to their home in New London; that some trouble came up about claims against the estate of L. B. Smith for his care and the Gluecks took Abbie Smith to see their attorney, Mr. Rendlen, at Hannibal; that

Abbie Smith also wanted to discuss with Rendlen her rights to use some money in the bank and the proceeds of some live stock and other personal property of the estate which had been disposed of; that some four or five visits were made by Abbie Smith, Connie and George Glueck to see Mr. Rendlen. A copy of the will was given Rendlen and he gave this testimony:

"* * * Then I asked her if she and her husband had agreed upon this disposition of this property as outlined in the will and what she and her husband had talked about when they made the will. And she said that they had worked this out carefully, eliminating certain of the heirs, related people, and that they had come to the conclusion these were the people they wanted to have their property, and that she and her husband had had this property and that they had felt she would be able to live off the income earned by loaning money, which, apparently, from investigating the estate, they had made quite a number of loans, and that her demands were modest. And, in substance, she stated that she had had an agreement with her husband that this was what she wanted to do with the property."

He testified that Abbie said, "Well, that was what she and her husband had agreed upon, * * *" That he asked her if she desired to make any changes in the provision of the will and she said "No; this is exactly the way we agreed that it should be disposed of, and we don't want to change one single item in this will."

The testimony of Mr. Rendlen, in the main, was corroborated by both Connie and George B. Glueck.

In our opinion we will refer to appellants as defendants and to respondent as plaintiff, the position the parties occupied in the lower court.

In reviewing the case de novo we weigh the evidence and reach our own conclusions as to its weight, taking into consid-

eration the trial court's position to judge of the credibility of the witnesses. Shackleford v. Edwards, Mo.Sup., 278 S. W.2d 775, 779 [1]; Hart v. Hines, Mo. Sup., 263 S.W.2d 13, 14 [1].

Under defendants' first allegation of error it is contended that the plaintiff failed to offer evidence sufficient to establish that testators entered into a contract, irrevocable in nature, as to the disposition of their property after their death and that the trial court erred in so holding.

To support this contention defendants cite Wanger v. Marr, 257 Mo. 482, 165 S. W. 1027. This was an action for specific performance under a joint will. On page 1031 of 165 S.W. of the opinion the court stated:

"In order for this decree to stand, it must appear that the wills of John and Barbara Marr were executed pursuant to a contract supported by a sufficient consideration, and certain and definite in its terms. 40 Cyc. p. 2118. While direct evidence of the existence of such a contract is not indispensable, yet the contract must be proved by evidence measuring up to the standard fixed by the authorities cited and principles adverted to in the preceding paragraph."

In Re Opel's Estate, 352 Mo. 592, 179 S.W.2d 1, 4 [3], is cited, and the law is stated:

"So far as we can find, every opinion on the subject adopted by an appellate court of this state has required a very high degree of proof to establish an oral contract to execute mutual wills * * *. Such oral contract must be definite; proven as pleaded; cannot be established by loose or casual conversations; must be fair and the proof leave no reasonable doubt that the contract as pleaded was in fact made and has been performed by the party relying on the contract or the one through whom he claims. * * *"

The facts under which this case was decided are entirely different from the facts in the instant case. In fact, the wills in the case cited were not made at the same time, were not reciprocal, differed in their terms and did not comply with the alleged agreement in the pleadings.

Hart v. Hines, Mo.Sup., 263 S.W.2d 13 is cited by defendants. In this case the Supreme Court reviewed a judgment declaring joint will of husband and wife irrevocable after the death of wife and setting aside and cancelling a deed whereby the husband purported to convey property held by the entirety. In this case the court held that equity under proper circumstances will enforce a prior agreement that a joint will remain irrevocable after the death of one of the testators, and a husband and wife may, by prior agreement between them, include within the dispositive terms of a joint will property held by the entirety.

The facts in this case are different from the facts in the instant case in that the will expressly excluded the property in issue.

Poole v. Campbell, Mo.Sup., 289 S.W.2d 25, 31, is cited by defendants. The facts in this case involve specific performance of an oral contract to convey land. The case holds that the proof must leave no reasonable doubt that the contract was made; that the proof must be clear and definite and the cause proved as pleaded.

Shaw v. Hamilton, 346 Mo. 366, 141 S.W. 2d 817, 822, is cited. The law as declared in this opinion that an alleged oral contract to make a will involving real estate must be shown by proof of its terms, character, and part performance thereof, is so clear, cogent, positive and convincing as to leave no reasonable doubt in the mind of the chancellor.

In the case before us the decisive question is whether plaintiff's evidence was sufficient to convince this court that the will was executed pursuant to a contract to make an irrevocable mutual will dispos-

ing of the property referred to in the evidence.

■ An agreement to make a reciprocal and mutual will is performed when the will is made. Shackleford v. Edwards, supra, 278 S.W.2d at page 779. It is not necessary that the agreement be established by direct evidence. If the contract does not expressly appear in the language of the will the agreement may be supplied by competent witnesses whose testimony to admissions of the testators, or an express promise may be shown, evidence is also admissible of such facts and circumstances, and such relations of the parties, as to give rise to an implication that such an agreement was made, and such implication may have reinforcement from evidence of the conduct of the parties at the time of making of the will, and subsequently. Thus for the purpose of showing that a reciprocal will was intended to be mutual, evidence may be admitted of facts to show that each of the parties acted, in making the will, with the knowledge of the other, that the two wills were drawn by the same person, and at the same time, and at the joint request or direction of both parties and that they were in fact executed in pursuance of a common purpose and understanding. 69 C.J. p. 1304; 97 C.J.S. Wills § 1367; Shackleford v. Edwards, supra; Bennington v. McClintick, Mo.Sup., 253 S.W.2d 132, 135; Plemmons v. Pemberton, 346 Mo. 45, 139 S.W.2d 910, 916 [8, 9].

We are convinced from the evidence in the instant case and the circumstances surrounding the making of the will, including the terms of the will, itself, that the evidence is sufficient to give rise to an implication that L. B. Smith and Abbie Smith, his wife, did contract not to revoke this will. The strong inference from the will itself is reinforced and supplemented by testimony of witnesses offered by plaintiff of the statements made by L. B. Smith and his wife just prior to the execution of the will and statements made by Abbie Smith

after the execution of the will is sufficient to prove the existence of the contract pleaded.

When the will was made, obviously, the parties acted with full knowledge of its contents. It was drawn by the same scrivener. Both parties were present and executed it at the same time, before the same witnesses, and it would seem intended to accomplish a common purpose. The will, itself, is some evidence that it was mutual and made pursuant to an agreement that it was to remain in force at the death of the testators.

■ Our courts have held that the will, standing by itself, is not sufficient proof that the parties did, in fact, agree that their property was to be ultimately disposed of as provided in the will. But in this particular case the facts which appear from the will, itself, from the reciprocal provisions, and from the manner and mode of its execution, constitute significantly strong evidence of the existence of a contract between Mr. and Mrs. Smith not to revoke this will. Shackleford v. Edwards, supra, 278 S.W.2d at page 780 [7]; Plemmons v. Pemberton, supra, 139 S.W.2d at page 916 [8, 9].

We find there is no merit to the first alleged error.

Defendants, in their second assignment of error, state that assuming the will was jointly executed in pursuance of a preexisting agreement, the mutual or reciprocal obligation of the contract was that the survivor, Abbie Smith, had a life estate with unlimited power of disposal; that the trial court erred in not so holding.

Defendants say that since the will remained unrevoked at the death of the survivor, Abbie Smith, the only issue remaining is whether or not, under the terms of the instrument, Abbie Smith violated her pre-arranged obligation cancelling the note and releasing the deed of trust securing it. It is insisted that Abbie Smith exercised

her unlimited power of disposal, as provided by the will.

Plaintiff admits that deceased, Abbie Smith, was vested with power to sell and dispose of the twenty acres of land for her support and maintenance, but contends she could not give away the assets of the estate. He says there must have been a consideration for the release in question.

To sustain their position defendants cite Glidewell v. Glidewell, 360 Mo. 713, 230 S.W.2d 752, 754, 755; Mitchell v. Board of Curators of Morrisville College, 305 Mo. 466, 266 S.W. 481, 484; Masterson v. Masterson, 344 Mo. 1188, 130 S.W.2d 629, 631; Aurien v. Security Nat. Bank Savings & Trust Co., Mo.App., 137 S.W.2d 679, 684; Vaughan v. Compton, Mo.Sup., 235 S.W.2d 328, 330.

In the Glidewell case, 230 S.W.2d at page 757 [10] it was contended that intervenor pleaded an agreement between B. L. and Huldah Willis to execute joint and mutual wills and alleged that, by reason of having probated the 1923 document as B. L. Willis' will and accepting benefit of same, the document became her will also which she was estopped to revoke. The court held that there was no direct evidence of such an agreement nor evidence of circumstances from which such a contract can be inferred. Absent clear and convincing evidence of such agreement the will was revokable by her and the trial judge properly so ruled. The matter before the court was the quantum of the estate conveyed under the terms of the will.

The facts of the case are so different from the facts in the instant case as to constitute no authority for defendants' contention.

We have examined all of the above authorities and the law therein declared in no way supports defendants' case. The rules of law governing the quantum of estates conveyed in wills are properly declared in defendants' authorities cited, but do not aid defendants' cause. Every case must be decided upon the facts of that particular case.

In the instant case we found that L. B. and Abbie Smith executed a mutual will pursuant to a contract between them which was to remain unrevoked, containing provisions for the final disposition of their property; that the provisions under the circumstances were fair and equitable, and the contract was based upon a sufficient consideration. By the terms of this will property held by them by the entirety was included.

We agree with the findings of the trial court that: "The agreement between L. B. and Abbie as expressed in the will became irrevocable after the death of L. B. and Abbie had no right to give away a valuable tract of land. To hold otherwise would be to hold that the survivor could nullify the agreement written into the joint will while both were alive".

We find there is no merit in this contention.

Judgment affirmed.

STONE, P. J., not sitting.

RUARK, J., concurs in separate opinion.

RUARK, Judge.

It is my view that the surviving wife had the power to consume, for her own benefit, and so the power to dispose and change the form of, any of the assets; but that her ownership and control over the assets, in whatever form they might have taken or acquired, took on the nature of a trust not to give them away without receiving fair consideration and thus indirectly nullify the purposes which the parties evidently intended to be accomplished by the contract.