Wilford L. CLINE, Beth Cline Gramly, Nancy Lee Lessig and Carol Ann Lessig, Respondents,

v.

James F. GRAVES, Wanda Graves and Deborah Fruits, Appellants.

No. WD 33277.

Missouri Court of Appeals, Western District.

Oct. 5, 1982.

C.M. Hulen, Jr., Moberly, for appellants.

Arthur M. O'Keefe, Moberly, for respondents.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

WASSERSTROM, Judge.

This is a suit for specific performance of a contract to make reciprocal wills. The trial court granted judgment for plaintiffs, and defendants appeal. We affirm.

On September 8, 1961, William Claude Cline and Ora Belle Taylor entered into a written antenuptial agreement in contemplation of marriage. Each had been previously married. William had children from his first marriage and also grandchildren, who are plaintiffs in this case. Ora had no children.

The antenuptial agreement provided generally that each party would transfer his or her separate property to joint ownership, with right of survivorship. Each party also agreed to execute reciprocal wills, the provision in that regard being as follows:

"(10) Cline agrees to execute a Last Will & Testament providing that after all his just debts, funeral expenses and the expenses of his last illness are first paid, all the rest, residue and remainder of his estate, real, personal, and mixed, of every kind and description and wherever situated, be bequeathed to Ora Belle Cline, his wife, absolutely. (Note exclusions and limitations provided in Items 3 & 4 above [not pertinent in this case])

"Taylor agrees to execute a Last Will & Testament providing that after all her just debts, funeral expenses and the expenses of her last illness are first paid, all the rest, residue and remainder of her estate, real, personal and mixed, of every kind and description and wherever situated, be bequeathed to William Claude Cline, her husband, provided she pre-deceases him, or, in the event he pre-deceases her, as follows:

(a). Each of her surviving step-granddaughters, namely, Mrs. Roger Gramly, Carol Ann Cline and Nancy Lee Cline, be given the sum of Fifteen Hundred Dollars ($1,500.00) each.

(b). The residue, subject to (a) above be bequeathed to Wilford L. Cline, absolutely.

"Both Cline and Taylor agree that neither will alter the provisions of said wills without the consent of the other party."

On April 1, 1964, the parties entered into a joint will which provided that on the death of either spouse, all the property of the deceased party should become the sole and separate property of the surviving spouse "for his or her use as long as the survivor shall live." The joint will went on to provide that after the death of the survivor, distribution should be made of $1,500 to each of Beth Cline Gramly, Carol Ann Cline, Nancy Lee Cline, and that the rest, residue and remainder of the property should go to Wilford L. Cline.

On August 16, 1964, the joint April will was replaced by reciprocal wills. William's will provided that after payment of all just debts and expenses, the rest of his property was left to Ora if she survived; but should she not survive then provision was made for distribution as set forth in the antenuptial agreement. Ora's will provided for payment of just debts and expenses and then provided that the rest of her property was left to William if he survived; but should he not survive, then provision was made for distribution pursuant to the terms of the antenuptial agreement.

William died on April 22, 1967, and Ora became possessed of all the property theretofore owned by the two spouses. Thereafter, some eleven years later, Ora commenced a series of property transfers to her two cousins and their daughter, who are the defendants in this case. On June 14, 1978, Ora purchased with her funds certificate of deposit No. 14870 from City Bank and Trust Company of Moberly, Missouri, in the sum of $8,000, and had the certificate issued to her or James F. Graves or Wanda Graves or Deborah Graves. On July 14, 1978, she purchased with her own funds from City Bank and Trust Company certificate of deposit No. 14869 in the sum of $8,000 also payable to her and her three relatives. On December 1, 1978, she had her checking account in the City Bank and Trust Company changed from her own name to that of

Ora B. Cline or Wanda Graves; the amount in the checking account on that date was $9,172.12.

In addition, on November 2, 1978, Ora executed a new will leaving all of her property to James F. Graves, with alternate bequests to his wife Wanda and their daughter Deborah. After the transfers mentioned above, all that Ora owned which could pass under the will were three rings and household goods and personal property.

Ora died on October 27, 1979. Her 1978 will was filed in the probate court, but no further probate proceedings have occurred. Out of the cash money received by them as surviving joint tenants of the checking account, defendants paid Ora's funeral bill in the amount of $2,810.70. They received informally possession of the rings, household goods and personal property, all of which except the rings they have sold.

After Ora's death, William's descendants, the plaintiffs here, filed the present lawsuit. The trial court found that with respect to each of the transfers, Ora "was acting in direct violation of the terms of the irrevocable contract." The court declared that defendants held the two certificates of deposits as trustees for the benefit of plaintiffs and ordered defendants to endorse each certificate to the plaintiffs, together with interest collected by defendants thereon. The court further declared that defendants held the bank account as trustees for the benefit of plaintiffs and ordered defendants to pay over the full amount of that account to plaintiffs, less the amount of the funeral bill paid, but together with interest which the defendants had received since October 27, 1979. The court further ordered defendants to deliver to plaintiffs the rings and the proceeds of the sale of Ora's household goods and personal property.

### I.

For their first point on appeal, defendants claim that the antenuptial agreement contemplated only a life estate to the survivor of the spouses, that the April 1964 joint will gave the survivor only a life es-

tate, and that the August 1964 wills by giving the survivor a fee simple estate evidenced a changed intention by both parties; and that therefore the parties by the execution of the August wills abrogated the antenuptial agreement. The fallacy of this argument lies in the fact that there is no conflict between the antenuptial agreement and the August 1964 wills.

An examination of the antenuptial contract discloses that the parties at that time contemplated separate, rather than joint, wills. In that respect, the August 1964 wills conform better to the original intention than did the April wills. Even more importantly, the form in which the property was left to the surviving spouse under the August wills gave to the survivor no more than had been provided by the 1961 agreement. Paragraph 10 of that agreement required that William execute a will under which all of his property would "be bequeathed to Ora Belle Cline, his wife, *absolutely....*" (emphasis added). Of course, the bequest to Ora was subject to her obligation to leave the property to William's children and grandchildren at the time of Ora's death.

The August 1964 wills did not depart in any way from the 1961 antenuptial agreement. There is no basis for saying that the execution of the August wills constituted a revocation of the 1961 antenuptial agreement.

### II.

For their second point on appeal, defendants argue that in the antenuptial agreement the survivor of the spouses was bound to bequeath and devise to the plaintiffs only such property as remained in the ownership of the survivor at his or her death; and that the provisions of that agreement therefore do not affect any property which had been transferred inter vivos during the lifetime of the survivor. Their argument proceeds that since Ora transferred the certificates and bank accounts during her lifetime, the antenuptial agreement could not operate with respect to that property.

■ Much litigation has developed under agreements between spouses to make joint and mutual wills concerning the validity and effectiveness of transfers made by the surviving spouse of property inter vivos after the death of the spouse first to die. The voluminous cases on this subject are collected in an extensive annotation, 85 A.L.R.3d 8 (1978). The rule to be deduced from those cases, followed in a majority of the jurisdictions including Missouri, is that the surviving spouse has a right to use and convey property covered by the agreement for all appropriate living expenses and maintenance, which could include even modest gifts. However, the surviving spouse cannot defeat the agreement by giving away all of the property without consideration by way of a disguised testamentary disposition.

*Bower v. Daniel,* 198 Mo. 289, 95 S.W. 347 (1906), overruled on other grounds in *Wanger v. Marr,* 257 Mo. 482, 165 S.W. 1027 (1914), illustrates the above principle. In that case, husband and wife executed a joint will pursuant to mutual agreement that it should remain unrevoked after the death of the spouse first to die. After the death of the wife, the husband nevertheless made a conveyance without consideration and retaining to himself a life estate in the property. It was held that the conveyance violated the agreement and was ineffective:

"Conceding the joint will as embracing only such property as each (the husband and wife) had at the time of his or her death, and that the testator might have thereafter sold and disposed of his property in good faith, or 'given it away,' as said in Van Duyne v. Vreeland, supra, under the authorities cited, it was a fraud in fact and in law for him to convey it to others, voluntarily and without consideration, reserving to himself a life estate, and in this way make a disposition of his property, both by deed and by will, different from that for which he contracted with his wife in the joint will. There can be no question, we think, that the testator executed those voluntary conveyances and made the subsequent will for the purpose of defeating the joint will, which acts were, in our opinion, ineffective for that purpose."

Similarly in *Glueck v. McMehen,* 318 S.W.2d 371 (Mo.App.1958), spouses pursuant to an agreement between them, executed a joint will under which all the property of the spouse first to die went to the survivor with "full ownership ... subject only to the payment of debts of the deceased and ordinary administrative expenses...." A further provision, however, was made for distribution at the death of the survivor. After the death of the husband, the wife deeded certain real estate and took back a note secured by a deed of trust. Thereafter she cancelled the note and released the deed of trust. It was held that this conveyance without consideration violated the agreement between the spouses:

"We agree with the findings of the trial court that: 'The agreement between L.B. and Abbie as expressed in the will became irrevocable after the death of L.B. and Abbie had no right to give away a valuable tract of land. To hold otherwise would be to hold that the survivor could nullify the agreement written into the joint will while both were alive'."

Likewise in *Shackleford v. Edwards,* 278 S.W.2d 775 (Mo.1955), spouses made mutual and reciprocal wills pursuant to an agreement. After the death of the husband, the wife conveyed certain property for $1 and love and affection to her son. The nieces of the husband sued to specifically enforce the agreement between the spouses. It was held that the conveyance was a violation of the contract and the deed was therefore ordered cancelled.

■ The above principle applies here. First of all, it must be noticed that Ora transferred all her property of any substantial value. Moreover, the conveyance of these substantial income producing assets was in the form of conveyance to joint names, under which she could retain all of the benefits and income during her lifetime. Such a conveyance is little more than a substitute for testamentary disposition. In dealing with the highly analogous situation of transfers allegedly in fraud of marital

rights, it has been held that a transfer by a husband to himself and another in joint names is indicative of a fraudulent intent. So in *Nelson v. Nelson,* 512 S.W.2d 455, 1.c. 459 (Mo.App.1974), it was held that "the intrinsic nature of this type of joint survivorship ownership is quasi testamentary, and that fact has been treated as a substantial factor for consideration concerning the intention of the transferor-spouse, with transfers of this general nature frequently being referred to as only 'illusory.' . . ." Holding to the same effect: *Matter of Estate of LaGarce,* 532 S.W.2d 511, 515 (Mo.App. 1976); *In Re Estate of Lowe,* 519 S.W.2d 373, 377 (Mo.App.1975).

Also indicating that the transfers in question were quasi testamentary, is the fact that at about the same time as these transfers, Ora also executed a new will leaving all of her property to defendants. Quite obviously, the transfers and the execution of the new will were all part of an integrated testamentary pattern.

Defendants argue, however, that these conveyances were based upon good consideration given by defendants to Ora. As stated in their answer: "Defendants assert that the transfer of the interest of Ora Belle Cline in and to the above mentioned certificates of deposit and checking account were in consideration of the love and affection that she bore for the Defendants and as partial compensation for services rendered by Defendants to Ora Belle Cline over many years." Of course, "love and affection" is not consideration in the sense of the present discussion. What remains for attention is the contention that defendants rendered services to Ora for which the conveyances were intended as compensation.

The evidence fails to sustain the contention. The only basis to support the claim of consideration consists of the testimony of the lawyer to whom Ora went for the purpose of having the 1978 will prepared, who testified that at that time Ora told him that after William's death "Mr. and Mrs. Graves basically took care of her, that before she relied on her husband and after his death

she relied on them to take his place, grocery shopping, to the doctor, whatever needed to be done, and relied completely upon her [sic] judgment." He further testified:

"Q. And she—it was her intent at that time, as it appears to you, to give everything to them, or to James first, in payment of all the services and nice things they had done for her, is that correct?

A. Yes, for whatever other reasons she had for leaving people—she mentioned the fact when I inquired about any agreement that his relatives really didn't help her at all, these people were the ones helping her and that is who she wanted to benefit.

Q. She wanted to leave it all to them because they had been nice to her?

A. Yes."

That testimony falls far short of showing consideration for the transfers. Rather, the statements made by Ora to her attorney at the time of the last will were merely an explanation of why she wanted to make defendants the objects of her testamentary bounty.

The trial court correctly held that the transfers here were in contravention of the antenuptial agreement.

### III.

■ For their final point, defendants contend that the antenuptial agreement recognizes that debts due and owing from Ora should be first paid at the time of her death before any distribution to plaintiffs; and defendants further contend that they do have a just claim for services against Ora's estate which they should be permitted to prove and collect. A complete answer to this contention lies in the fact that defendants made no such claim or argument before the trial court. They will not be permitted to originate a brand new contention of this sort for the first time on appeal.

Moreover, the record contains no support for the contention of a valid claim for services. Defendants do not suggest that they had any express contract with Ora for the

performance of services for which they were to be compensated. Any claim for payment would therefore have to be based on quantum meruit.

The sum total of all evidence concerning the alleged services is contained in the testimony of Ora's attorney, quoted above under Section II of this opinion. That testimony is wholly lacking in any detail as to just what defendants did for Ora, the amount of time consumed and the circumstances under which the alleged services were performed. Any factual basis upon which to allow compensation for alleged services is woefully insufficient.

The judgment is affirmed.

All concur.